Bell *v.* Smalley.

WILSON F. BELL, administrator *cum testamento annexo* of
Charlotte Bell, deceased,

*v.*

ANTOINETTE SMALLEY, HANNAH E. BELL, AMOS S.
BELL et al.

1. Where a will directs that in case A's wife shall survive him an annual
payment shall be made to her during her widowhood, but shall cease at her
remarriage or on her death, if A and his wife are divorced, so that when A
dies the woman who was his wife does not become his widow, she will not be
entitled to the legacy.

2. Where a testator directs that the interest of a sum of money shall be paid
to his son A for life, and on A's death that the principal shall be divided
among his (the testator's) other then surviving children and issue of any de-
ceased child, A's issue are entitled to a share of the principal.

On final hearing on bill and answers.

*Mr. R. S. Woodruff,* for Hannah E. Bell and Amos S. Bell.

NOTE.—As to the effect of a divorce upon the rights of a spouse secured
under a marriage settlement, see *Fitzgerald* v. *Chapman,* L. R. (*1 Ch. Div.*)
*563; Burton* v. *Sturgeon,* ·L. R. (*2 Ch. Div.*) *318; Barclay* v. *Waring,* 58 Ga.
86; Jordan v. Clark, 81 Ill. 465; Harvard College v. Head, 111 Mass. 209;
Clarke v. Lott, 11 Ill. 105; Schoch's Appeal, 33 Pa. St. 351; In re Noah, 73 Cal.
583; Behrley v. Behrley, 93 Ind. 255.

A divorced woman is not a widow, and, as such, entitled to a distributive
share of her husband's estate after his death, *Ensign's Case, 37 Hun 152, 103
N. Y. 284;* nor entitled to letters of administration on his estate, *Goods of
Nares,* L. R. (*13 Prob. Div.*) *35; Dobson* v. *Butler,* 17 Mo. 87; see *Runyon's
Case, 12 N. J. L. J. 15; Headman* v. *Rose, 63 Ga. 458; Willis* v. *Jones, 42 Md.
422;* nor is a divorced husband entitled to letters on his wife's estate, *Goods of
Hay, 35 L. J. (P. & M.) 3;* unless the divorce be annulled after the intestate's
death, *Boyd's Appeal, 38 Pa. St. 246.*

A statute prohibited a marriage by one with his brother's wife.—*Held,* that
marrying a brother's widow was an offence within the statute, *Commonwealth
v. Perryman, 2 Leigh 717.*

Whether a " wife," in the Pauper law, includes a widow, see *Croyden Union
v. Reigate Union,* L. R. (*19 Q. B. D.*) *385; Medway Union* v. *Bedminster Union,*
L. R. (*21 Q. B. D.*) *278; Buffaloe* v. *Whitedeer, 15 Pa. St. 182.*

Whether " unmarried " means never having been married, or **only not mar-**

Bell *v.* Smalley.

*Mr. John R. Emery,* for Antoinette Smalley and Charlotte J. Rossell.

VAN FLEET, V. C.

The bill in this case was filed for the purpose of having the meaning of two provisions of the will of Charlotte Bell, deceased, judicially settled. The testatrix died in May, 1860. Her will was admitted to probate in April, 1867. By her will the testatrix gave the whole residue of her estate, after the payment of her debts, funeral and testamentary expenses, to her executors, with direction to invest the same, and then, in the language of the will

"To pay the interest and income thereof from time to time, as the same shall be received, to my son, Francis E., during his lifetime, and in case his wife, Hannah E., should survive him, then to her, during her widowhood, in like manner, one-half of the said interest and income; the remaining one-half to be put at interest and kept invested at interest, with the interest thereon from time to time accruing, and at the decease of my said son Francis, or in case his said wife should survive him, at her remarriage or decease, then to pay said principal sum, with the increase thereof, and all arrears of interest or income remaining unexpended, to my other then surviving children and to

ried when the estate vests, see *Theob. Wills (2d ed.) 213; 1 Jarm. Wills 521–524; Dalrymple* v. *Hall, L. R. (16 Ch. Div.) 715; Mertens* v. *Walley, L. R. (26 Ch. Div.) 575; Pratt* v. *Mathew, 22 Beav. 328, 8 DeG., M. & G. 522; Humphrey* v. *Winship, 28 Hun 33; Corbett* v. *Corbett, L. R. (14 Prob. Div.) 7; Davison's Appeal (Pa.) 16 Atl. Rep. 598; Kirk* v. *Long, 7 U. C. C. P. 363; People* v. *Volksdorf, 112 Ill. 292.*

Under a bequest "to my daughter-in-law," who was the widow of testatrix's son, the widow having married again in testatrix's lifetime, and being still married at testatrix's death, was held not to be the widow of testatrix's son, *Commonwealth* v. *Powell, 51 Pa. St. 438;* see *Lamkin* v. *Knapp, 20 Ohio St. 454; Bullock* v. *Bennett, 7 DeG., M. & G. 283.*

Lands were devised to trustees to pay an annuity to G. and his wife jointly for life, and to the survivor. The marriage was dissolved for the wife's adultery.—*Held,* that G. was entitled to the whole annuity, *Knox* v. *Wells, 2 Hem. & M. 674;* see *Duncan* v. *Campbell, 12 Sim. 616; Hays* v. *Sanderson, 7 Bush 489; Rose* v. *Rose, 93 Ind. 179.*

A divorce was held to render a husband and wife tenants in common of an estate of the entirety, *Harrer* v. *Wallner, 80 Ill. 197; Lash* v. *Lash, 58 Ind. 526; McLeran* v. *Benton, 31 Cal. 29;* see *Snodgrass* v. *Snodgrass, 40 Kan. 494; Beach* v. *Hollister, 5 T. & C. (N. Y.) 568, 3 Hun 519; Ames* v. *Norman, 4 Sneed 683; Benson's Case, 8 Biss. 116; Jackson* v. *Jackson, 1 McArth. 34; Boggs* v. *Boggs,*

the heirs of any deceased child, in equal shares, the heirs of any deceased child to take their parent's share, in equal parts, if there be more than one."

Francis E. Bell, the life-tenant of the whole fund, died in November, 1888, leaving one child, Amos S. Bell. Hannah E. Bell, the person who was the wife of Francis E. when the testatrix died, also survived Francis E., but she was not his wife at the time of his death. She was divorced from him by a decree made by this court on the 9th day of June, 1883, at her instance, for his fault. The decree was absolute, divorcing the parties from the bond of matrimony, dissolving the marriage between them and freeing and discharging each from the obligations thereof.

Out of this condition of facts two questions arise : *First.* Is Hannah E. Bell, notwithstanding that she has, since the date of the decree of divorce, been a *fème sole*, and is not now and has never been the widow of. Francis E. Bell, deceased, nevertheless entitled to one-half of the income of the fund set apart for the use of Francis E. during his life ? And, *second,* will Amos S. Bell, the son of Francis E., be entitled, by the terms of the

*55 Ga. 590;* and to destroy an estate by the curtesy initiate, *Howey* v. *Goings, 13 Ill. 95; Porter* v. *Porter, 27 Gratt. 599.*

A trust was for testator's married daughter for life, and then for her children, but if she should survive her husband, then to her absolutely. On her divorce—*Held,* that the trust ceased, and that she was entitled to the fund, *Koenig's Appeal, 57 Pa. St. 352.*

A share of testator's residuary estate was given in trust for his son for life, and after his decease in trust to pay unto or permit any wife of his son to receive the annual income of his share during her life. Testator died in 1864. In 1882 the son married a woman from whom he was divorced, on his petition, in 1887. He died in 1888 without issue, and without having married again.—*Held,* that the woman was not entitled to the income of the son's share, *Hitchins* v. *Morrieson, L. R. (40 Ch. Div.) 30.*

A "widow" may sue for damages for the death of her husband through negligence, although she has married again, *Georgia R. R. Co.* v. *Carr, 57 Ga. 277;* see *Dallas & W. R. R. Co.* v. *Spicker, 61 Tex. 427; Roberts* v. *Ogdensburgh R. R. Co., 34 Hun 324; Coal Run Coal Co.* v. *Jones, 19 Ill. App. 365, 20 N. E. Rep. 89.*

A "relict" may inherit from her deceased husband, although she has remarried, *Spitler* v. *Heeter, 42 Ohio St. 100;* and so may a "widow," *Ralston* v. *Bozeman, 36 Ga. 546; Foster* v. *Fifield, 20 Pick. 67.*

Bell *v.* Smalley.

bequest, to a share of the fund in question when it is distributed?
The solution of the first question depends entirely upon whether
it appears, on a careful consideration of all the pertinent pro-
visions of the will, that the testatrix meant that Hannah should
only take in case she became the widow of Francis, and only for
the period she remained his widow, and not otherwise. If the
gift·is made to her as an individual, regardless of her matrimo-
nial *status* or character, the testatrix meaning that she should
take the subject of the gift even if she never became the widow
of Francis, then it is clear that the fund must be held for her
benefit, and she must be paid one-half of its income. But if,
on the contrary, the gift is conditional, the meaning of the tes-
tatrix being that Hannah should have no right to the subject of
the gift unless she became the widow of Francis, then it is
equally clear that she has no right to any part of the fund in
question. That the gift is of the latter kind seems to me to be
beyond all question. The words of gift are, "And in case his
wife, Hannah E., should survive him, then to her, during her
widowhood, in like manner, one-half of the said interest and

---

A "widow," after marriage, is entitled to letters of administration on her
deceased husband's estate, *Webb* v. *Needham, 1 Addams 494;* see *Hardy* v.
*Smith, 136 Mass. 328.*

As to who is a "widow" entitled to the proceeds of a life insurance policy,
where the assured married again during his first wife's life but before the
policy issued, see *Polar Star Assn.* v. *Boniface (N. Y. S. C.), 31 Alb. L. J. 151;
Story* v. *Williamsburgh Assn., 95 N. Y. 474; Equitable Life Ins. Co.* v. *Paterson,
41 Ga. 338; 31 Alb. L. J. 283.*

A wife's interest in a policy of insurance on her husband's life, payable to
herself, was held not to be terminated by her divorce from him, *McKee* v.
*Phœnix Ins. Co., 28 Mo. 383; Connecticut Mut. Life Ins. Co.* v. *Schaefer, 94 U. S.
457; Olmstead* v. *Keyes, 85 N. Y. 593, 601; Phœnix Life Ins. Co.* v. *Dunham,
46 Conn. 79;* but see *Tyler* v. *Odd Fellows Assn., 145 Mass. 134; Goldsmith* v.
*Union Mut. Life Ins. Co., 18 Abb. N. C. 325;* see, also, *Johnson* v. *Van Epps, 14
Ill. App. 201, 110 Ill. 551; Matter of Welch, 43 Conn. 342; Ætna Life Ins. Co.*
v. *Mason, 14 R. I. 583 ; American Legion of Honor* v. *Smith, 18 Stew. Eq. 466.*

Under a statute·allowing a wife to apply for alimony, a divorced woman is
included, *Woods* v. *Waddle, 44 Ohio St. 449.*

A gift was made to trustees to pay T. the income thereof for life, and if T.
should become bankrupt then to his wife and children. T. was married at
testator's death, but his wife died without issue, and T. afterwards became

income." The period for which the gift is to continue in force is during her widowhood. At her remarriage, or on her death, the will says the principal shall be distributed. So that it is perfectly clear that the testatrix meant that Hannah should only take while she remained the widow of Francis, and it necessarily follows that if her *status* or condition became such, prior to the death of Francis, that she did not become a widow by his death, she has not now and never can have the character in which alone she can take. By the decree of divorce she became a *feme sole*, and could, the next day after that decree was pronounced, have lawfully contracted a new marriage. Suppose she had done so, or suppose she had remarried at any time prior to Francis's death, might she not, in that state of affairs, have asserted, on Francis's death, just as good a claim to the subject of the gift as she can now? The date fixed by the will for the distribution of the fund, in case Francis's wife survived him, was the remarriage or the death of his widow. The remarriage meant was obviously one occurring after the death of Francis, and not before. If, therefore, Hannah had remarried after the divorce and before the death of Francis, it might have been contended,

bankrupt. T. then married again, and his wife had two children.—*Held*, that the trust revived, *Longworth v. Bellamy, 40 L. J. (N. S.) Ch. 513.*

Under a gift to trustees to pay the income to G. for life, and thereafter to his wife and children, G. then had a wife and one child, but the wife died before testator. After testator's death G. remarried, and died leaving a widow who claimed and recovered a moiety with G.'s child, *Lyne's Trust, L. R. (8 Eq.) 65;* see *Lewis v. Lewis, 62 Ga. 265.*

A testator gave an interest to his daughter B. (then unmarried) for life, and then "for any husband with whom she may intermarry, if he should survive her, for his life." B. married the defendant, and was divorced from him on his petition, and he married again and survived B.—*Held*, that he was entitled, *Bullmore v. Wynter, 48 L. T. (N. S.) 309, L. R. (22 Ch. Div.) 619.*

Under a gift "to my wife A., the sum of $400 to be paid to her annually * * * during her natural life," in lieu of her dower—*Held*, that A. was entitled, although testator obtained a divorce from her for her misconduct, after the will was executed, and four years before his decease, *Card v. Alexander, 48 Conn. 492.*

J., being about to marry E., made his will as follows: "I give and bequeath to my intended wife E. the sum of $1,000, to be paid to her within one year after my decease." He married E., who soon afterwards abandoned him, and

Bell *v.* Smalley.

-with just as much force of reason as it can now, that she was ·entitled to the subject of the gift, and would continue to be so ·entitled until she should, at some time subsequent to Francis's ·death, contract another marriage. The meaning of the testatrix is, in my judgment, clear and free from doubt. She has told what she meant in plain and simple language, and what she said was this : That in case her son's wife, Hannah, survived her husband, Hannah should, during her widowhood, have one-half of the income of a certain fund, and that on Hannah's remarriage ·or death her right should cease, and the fund should be distributed. Now, although Hannah survived the man who was her husband, she was not his wife when he died, but a *feme sole*, and consequently did not become a widow by his death, and is not now and can never be in the state or condition which, by the terms of the will, she must be in to qualify her to take the gift.

This view conforms to precedent. In *Bullock* v. *Zilley, Sax. 489*, it appeared that the testator directed a sum of money to be put at interest, and the interest to be paid annually to the support and maintenance of his nephew, Thomas Bullock, and

---

he obtained a divorce from her therefor. E. survived him, and was held to be entitled to the-$1,000, *Charlton* v. *Miller*, *27 Ohio St. 298*.

Trustees were, by will, ordered to pay a specified sum to testator's son and his wife E. jointly, and if the son "should die leaving his wife E. him surviving," then to E., "so long as she continues unmarried." Before the son's death he obtained a divorce from E. for her adultery, and E. had not remarried.—*Held*, that E. was entitled so long as she remained unmarried, *Knox v. Wells, 48 L. T. (N. S.) 655*.

Under a bequest to A. if sole and unmarried, but if married to her for her separate use for life, with remainder to her children, and A. is divorced at the time of the gift taking effect, she will be absolutely entitled, although she has children, *Lesingham's Trusts, L. R. (24 Ch. Div.) 703*.

Testator gave a legacy "to my wife E. C.," and in addition thereto an annuity "so long as she shall continue my widow and unmarried," in lieu of her dower. After the execution of the will, E. C. obtained a divorce from the testator for his impotency, the marriage being thereby declared void *ab initio*.—*Held*, that E. C. was entitled to the legacy, but not to the annuity, because, never having been in law testator's wife, she never could be or "continue" his widow, *Boddington* v. *Clariat, 48 L. T. (N. S.) 110, L. R. (22 Ch. Div.) 597, (25 Ch. Div.) 685;* see *Davenport's Trusts, 1 Sm. & Giff. 126; 27 Sol. J. 428; Boykin* v. *Rain, 28 Ala. 332 (65 Am. Dec. 349, 358, note)* —Rep.

Rebecca, his wife, and their children. Thomas and Rebecca were divorced after the testator's death. After the divorce the executor refused to pay Rebecca any part of the interest, and she thereupon brought suit in this court. Chancellor Vroom, in deciding the case on demurrer, said, that if the words "his wife" were simply used as words of description to designate the legatee, Rebecca would be entitled to take, but if they were used to indicate the capacity or character in which alone she could take, then, inasmuch as she had ceased to be the wife of Thomas, she would not be entitled to take. He was of opinion that they were used simply to designate the legatee, and he therefore held that her suit was well brought. In my judgment, Hannah is not entitled to anything under the will, and I am also of opinion that the fund set apart for the use of Francis, during his life, became distributable on his death.

The other question relates to the distribution of the fund, and may be properly stated as follows: Is Amos S., the only child of the testatrix's son Francis, entitled to a share of the fund? The testatrix directed that the fund should be distributed either on the death of Francis, or in case his wife Hannah survived him, at her remarriage or on her death; and in directing to whom distribution should be made, she said: "To my other then surviving children and to the heirs of any deceased child, in equal shares, the heirs of any deceased child to take their parent's share, in equal parts, if there be more than one." Now, as I understand this direction, it embraces all the testatrix's children who shall survive to the time when the fund becomes distributable, and also the issue of any who should die before that time. Francis was necessarily excluded from the distribution, because no division was to be made until his death, but in providing that the issue of a deceased child shall succeed to its parent's share, it will be observed that the testatrix employs the most comprehensive language. Her words are, "and to the heirs of any deceased child." Francis is a deceased child, and Amos is his son. The words just quoted are broad enough to embrace Amos. He ought not to be excluded, except such appears to have been the intention of the testatrix. No such intention ap-

pears. On the contrary, it appears that the testatrix wanted the issue of *any* deceased child to take its parent's share. The clause immediately preceding the one above quoted excluded Francis. If the testatrix had intended to exclude the issue of Francis also, she would naturally have said so in the succeeding clause, thus making the whole sentence read in this wise: "To my other then surviving children and to the heirs of any other deceased child." Unless the word other be interpolated by construction, it is not possible, as it seems to me, to read this sentence so as to exclude Amos. I know of nothing which would justify such a construction. To adopt it, I think, would be more likely to frustrate than to give effect to the intention of the testatrix.