SARAH F. CROCHERON

*v.*

DUDLEY D. FLEMING.

[Decided July 23d, 1908.]

Testatrix bequeathed the residue of her estate in trust, one share to be invested and the income paid semi-annually to complainant for life, and, if she should die either before or after testatrix and her daughter should survive her, the income to be similarly paid to the daughter for life. By a codicil she provided that on complainant becoming a "widow," or should she be a "widow" at testatrix's decease, the principal should be paid her absolutely for her own use, and, if she should die before her husband and their daughter should survive her, on the daughter's attaining twenty-one years of age one-half of the share should go to her and the other one-half to others. At the execution and probate of the will complainant was the wife of A. G., but was subsequently divorced from him and married C., who died in January, 1907, after which A. G. died. —*Held*, that the codicil did not require that complainant be the "widow" of A. G. in order to be entitled to such share of the estate so bequeathed, and that she was a "widow" within such codicil.

On bill for the construction of a will.

*Mr. J. Merritt Lane,* for the complainant.

*Mr. John L. Keller,* for the defendant.

STEVENS, V. C.

Elizabeth A. Edge, by her last will, provided as follows:

"Seventeenth. I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, to my executors as joint tenants and not as tenants in common, in trust, to sell and convey the same and to divide the proceeds into seven equal shares and to pay over the said shares as follows:"

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"One share to be kept invested and the income thereof paid half-yearly to my niece, Sarah P. Greene (the complainant), during her natural

life, and if she should die either before or after me, and her daughter, Annie Bell Greene, should survive her, said income to be paid half-yearly to said Annie Bell Greene during her natural life."

She then provided that on the decease of Sarah and Annie, the share should be divided among her other nephews and nieces.

By a codicil she modified the above disposition as follows:

"As to the one-seventh share of my residuary estate, which in said will is directed to be invested and the income thereof paid to Sarah F. Greene for her life, I direct that on her becoming a widow, or should she be a widow at my decease, the principal of said share to be paid to her absolutely for her own use, and that if she should die before her husband, and their daughter, Annie Bell, should survive her, and on Annie's attaining the age of twenty-one years one-half of said share shall go to her and the other half to be divided among said Annie and the children then living of my other nephews and nieces above named (viz., James Dudley, Francis H., Alice E. F., Mary Louisa, and James F. Edge), equally *per capita.*"

At the time of the execution and probate of the will the complainant was the wife of Augustus Greene. She was subsequently divorced from him and she married William Crocheron. Her second husband died in January, 1907, and then Augustus Greene died.

The sole question is whether Mrs. Crocheron is a widow within the meaning of the codicil and so entitled to the principal of the above-mentioned share.

It will be noticed that the codicil contains two clauses, one of which relates wholly to the gift to Sarah Greene and the other wholly to the gift to her daughter, Annie. They are joined by the conjunctive "and," but the particle seems misplaced. If we read the first clause by itself it is perfectly plain that the event has happened upon which the payment of the principal is to be made. She has become "a widow." She has not, however, become the widow of her first husband, even though he be now dead, but of her second husband. It seems to me to be an altogether unauthorized perversion of the meaning of words to assert that a divorced woman is a widow unless there is something in the contract which indicates that the word was used

in an improper sense. The question, then, is, have the comprehensive words "a widow," contained in the first clause, been so cut down by anything found in the second clause that they must be held to mean "widow of Augustus Greene?" The argument that they have been, rests upon the words "her husband" and "their daughter." The word "their" points very clearly to Greene as the husband referred to in the second clause, but why does it contract the generality of the expression "widow" in the first? It is, no doubt, true that the testatrix contemplated the possibility of Mrs. Greene becoming the widow of Mr. Greene, but what is there in the language used that forbids us to think that she contemplated her as becoming the widow of a second husband? Are divorces nowadays so infrequent, that no woman is ever contemplated as likely to become the widow of a second husband, although the man from whom she is divorced be still alive?

Suppose we interpolate the name Augustus Greene after the words "her husband" in the second clause and then read the two clauses; what do we find? All we find is two separate provisions, one for the mother and the other for the daughter. The one making the gift to the mother dependent upon her becoming a widow, the other making the gift to the daughter—described as being the daughter of Sarah and Augustus—dependent upon her mother's death before her father and upon her own survivorship. In each clause, the person, the share and the contingency are different and apparently complete in themselves. Why add a limitation to the first that we do not find in it? If the gift to *Sarah,* the mother, had been made, in terms, dependent upon her surviving her husband, unquestionably the person intended would, without any help from the word "their" have been Mr. Greene, but it is the gift to Annie that is made dependent upon her mother's death before her father. The gift to Sarah is made dependent only upon her becoming "a widow." I think complainant is entitled to relief.