On September 19th, 1899, the defendant, William Henry Markis, married one Sarah Murphy.
On April 13th, 1909, the said Sarah Markis, the wife of said defendant, made, published and declared her last will and testament, which will contained the following:
"Third. I give, devise and bequeath unto my beloved husband, William Henry Markis, all the remainder and residue of my estate, real, personal and mixed, absolutely, of whatsoever kind and wheresoever situate, including all insurance money or moneys that my death may produce.
"And, fifth. I hereby constitute and appoint my beloved husband, William Henry Markis, sole executor, without bond, of this my last will and testament."
A number of years after the making of said will, Sarah Markis filed her petition in this court against her husband praying a dissolution of their said marriage, on the ground of adultery, and final decree was entered in said cause, bearing date November 8th, 1916, by which the said parties were divorced from the bonds of matrimony for said cause, and the said marriage was dissolved.
On September 14th, 1923, the said Sarah E. Markis, departed this life unmarried and without issue, but leaving her surviving the complainants, her sisters, nephews and a grandniece, respectively.
After the death of Sarah Markis, said William Markis produced before the surrogate of Atlantic county said last will and testament, which was duly probated, and the said William Henry Markis qualified as executor, and has taken upon himself the burden of the administration of the estate of the said Sarah Markis. *Page 155 
The only questions for determination are: Does William Henry Markis take under the provisions of section 3 of said will, and is he appointed executor thereof under clause 5.
In some jurisdictions, facts such as are here presented are sufficient upon which to presume an implied revocation of the will. In re McGraw Mich. 1924; 199 N.W. Rep. 686;37 A.L.R. 308.
This question is quite thoroughly annotated in 25 A.L.R. 49.
This annotation carefully distinguishes the cases of revocation of the will, or of the legacy or devise, or the lapse of the legacy or devise.
In this state, however, "no devise or bequest in writing * * * or any clause thereof shall be revocable, otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, canceling, tearing or obliterating the same by the testator himself or in his presence, and by his direction and consent; but all devises and bequests * * * shall remain and continue in force until the same be burnt, canceled, torn or obliterated as aforesaid, or by some other will, codicil or other writing duly executed." 4 Comp. Stat. pp. 5861, 5870.
No claim is made that the will was revoked.
Chancellor Vroom, in Bullock v. Zilley, 1 N.J. Eq. 489,
said: "The only question that can be raised is this: whether the words `his wife,' as applied to the complainant in the bequest, are to be taken as mere words of description; if so taken, the rights of the complainant are not affected by the divorce; but if the person taking must, necessarily, be the wife of Thomas Bullock, and take in that capacity, then her interest is at an end."
This has been the law for nearly a century. Steen v. Steen,68 N.J. Eq. 472; Bell v. Smalley, 45 N.J. Eq. 478.
The chancellor, in Bullock v. Zilley, supra, further said: "Upon what grounds the parties were divorced, or which complained of the other, I am not informed. The bill simply alleges the fact of the divorce. The demurrer admits it as stated, and the court can look no further than the pleadings. I am not aware, however, that any development of facts can *Page 156 
change the legal rights of the parties. Considering the case, then, simply upon the intention of the testator, as collected from the will itself, my conclusion is, for the reasons above stated, that the complainant is entitled to relief."
In Van Syckel v. Van Syckel, 51 N.J. Eq. 194, "a devise to A., and, at his death, to his wife, applies only to the person who was his wife at the date of the execution of the will, and does not extend to a wife taken subsequently thereto." Vice-Chancellor Green distinguishes this case from the cases therein cited and Swallow v. Swallow, 27 N.J. Eq. 278.
In Jones Estate, 211 Pa. 364, the opinions of the auditing judge, and of the judge on exceptions and of the opinion of Mr. Justice Potter, are very illuminating.
The court said: "What is there in the facts of this case to support the claim that the legacy has lapsed? The person named as legatee did not die in the lifetime of the testator, nor did any other event occur in the lifetime of the testator, which, under the language of the will, would render the testamentary gift inoperative. The donee survived the testator and is alive, and has both capacity and willingness to take under the will, but it is suggested in the argument that, while not physically dead, the donee, by her own act in obtaining the decree of divorce, ended the marital relations as absolutely as death would have done. This consequence did follow the divorce, in so far as the duties, rights and claims accruing to her by reason of the marriage are concerned. * * * What the law gave it took away, nothing more. The beneficiary * * * is here only as a legatee, and is asking for that only which testator gave to her of his free grace, and as a matter of bounty. That which he gave to her in his will was his own, to give or to withhold as he saw fit. A bequest needs no consideration to support it. As a legatee she stands upon the same footing as any other individual, and her relation to the testator has nothing to do with the case, unless he chose to make it an element in the bestowal of the gift. * * * The testator intended the gift for the individual, Mary Brown Jones, who was at that time his wife, and identified by him as such. We think the *Page 157 
bequest is unrestrictive, and that the words `my wife' are, as we said above, only descriptive, and do not import a condition that the beneficiary shall remain his wife. Nor do we doubt that as to the object of the legacy the will speaks from its date."
Mr. Justice Potter stated the law to be:
"The mere fact that a gift is made to a named legatee in certain character, as, for instance, to my wife, A, does not avoid the legacy, if the legatee does not happen to fill the character.
"The relationship, however, could not have been the sole motive since the gift is to the individual by name, and not to him simply as husband, nor is there, as in Bell v. Smalley,45 N.J. Eq. 478, the evidence offered by the restriction of the bounty to the time during which the beneficiary remains unmarried. We have no right to say that the gift was subject to the condition that the donee should at the time it took effect be the husband of the daughter.
"In Brown v. A.O.U.W., 208 Pa. 101, where a certificate was payable at the death of John Brown to his wife, Mattie Brown, we held that it was for the individual, Mattie Brown, without regard to the fact of her continuing to be the wife of the member, and subsequent divorce did not forfeit her right. The husband there had the power to change the beneficiary at any time, and we held that the fact that he did not do so, during a period of eight years between the divorce and his death, made evident his intention not to deprive his first wife of the benefit of the policy. Where a man retains a revocable instrument with full opportunity of revoking it, and does not revoke it, there is a strong presumption that he wishes it to stand." Chief-Justice Tilghman in Irish v. Smith, 8 S. R. 573.
In the Brown Case he had, after his divorce, married Anna Z. Whealer, who survived him as his widow.
Mrs. Markis lived nearly seven years after the divorce was granted. She did not, during these years, cancel or revoke her will, nor did she attempt to make any other testamentary disposition of her property. This situation must be *Page 158 
considered as a strong presumption that she desired no revocation or change in her will.
An analysis of the cases in the courts of this state indicates clearly that the law is as before stated, and that that rule always held unless there is contained in the will other qualifications or statements indicating that the gift was not to the person, but conditioned they should take in the character designated.
In Bell v. Smalley, supra, the court held that the use of the words "during her widowhood" made it perfectly clear that the testatrix meant that Hannah should only take while she remained the widow of Francis, and that having been divorced she never became the widow of Francis, and, therefore, she could not take. Vice-Chancellor Van Fleet, however, repeats the law and citesBullock v. Zilley, supra.
The reporter in a footnote to Bell v. Smalley annotates many cases, in all of which, where the question arises, the same distinction is noted.
In Steen v. Steen, 68 N.J. Eq. 472, Vice-Chancellor Bergen cites Bullock v. Zilley, supra, as expressing the law, but said: "My construction of the devise under consideration is that the words used by the testatrix were intended to describe the character or capacity in which the legatee should take."
Vice-Chancellor Bergen, in Collard v. Collard,67 Atl. Rep. 190, where the will read, "to my said wife, Emily M. Collard, for the term of her natural life, or so long as she remains my widow," said: "The testator uses the words `for the term of her natural life so long as she remains my widow.' At the death of the testator, when the will became effective, the devisee of the prior estate was not, and could not be, his widow, for she had never been his lawful wife, and the estate given was void because the conditions upon which it rested did not and could not exist. There was no wife, nor one who could be his widow. * * * Again, the gift to the supposed wife was void because the gift was not to her as a person. She could only take in the character of the wife of the testator. * * * The words `my wife,' as used here, are not words of description to designate the legatee, *Page 159 
but rather to indicate the character or capacity in which alone she could take, and, failing to answer that description at the time the will took effect, the gift to her failed."
There can be no question but that at the time of the making of the will the testatrix meant to, and did, devise and bequeath unto William Henry Markis all the remainder and residue of her estate, and appointed him executor of the will.
The words "my beloved husband" were clearly mere words of description. Nothing appears in the will to indicate the contrary. No case has been presented to me, nor have I been able to find one, which indicates that the use of such words, without other limitations or qualifications, make void such a bequest.
As this will has never been revoked or canceled, and no new will or codicil has been executed changing its terms, I will advise a decree that William Henry Markis, the defendant, is entitled to "receive" all the remainder and residue of the estate of said Sarah Markis, and that he is the executor under the provisions of said will.