William G. Meyer died October 30th, 1930. By the seventh clause of his will, dated November 25th, 1929, he gave $5,000 to complainant in trust for the benefit of his niece, Mildred K. O'Leary, to pay her the income for life, provided "that if she shall become a widow at any time or shall be a widow at the time of my death, said fund with all accruals shall be paid to her immediately." *Page 9 
Mrs. O'Leary married June 20th, 1925, and divorced her husband April 30th, 1931. He is still alive. She has requested complainant to pay her the principal of the trust and complainant seeks to be advised whether she is entitled to have it. The sole question for decision is whether or not Mrs. O'Leary, as a divorcee, is a widow within the meaning of the quoted clause.
A widow is a wife who outlives her husband; one whose husband is dead. Divorce puts an end to the marriage relation but the divorced wife is not a widow in contemplation of law. Swallow
v. Swallow's Adm'rs, 27 N.J. Eq. 278; Bell v. Smalley, 45 N.J. Eq. 478; Crocheron v. Fleming, 74 N.J. Eq. 567; Block v. P. G. Realty Co., 96 N.J. Eq. 159; 40 Cyc. 394.
But it is contended that the testator's sole intention was to create a trust to protect Mrs. O'Leary against her husband and that when she was no longer his wife and the reason for the trust had ceased, she should receive the principal. The argument is that on the facts disclosed by the testimony, the word "widow" should be construed to mean the same as "without husband."
The evidence shows that Mrs. O'Leary's relations with the testator were as father and daughter; that he never liked her husband and disapproved of her marriage; that her marital troubles commenced a few months after marriage and were known to the testator; that he frequently said she should be free from her husband and should divorce him; that he consulted his own attorney (who thereafter drew the will) as to how she could secure a divorce; that early in 1929 he went with her to another attorney to discuss divorce proceedings and that with this knowledge on his part and on the part of his attorney the will was prepared under the testator's instructions and was executed.
In a case where a testator devised property in trust for his daughter for life, with a proviso that if she became a widow the trust should end and she should have the trust property, it was held upon facts somewhat similar to those above recited, that the word "widow" should be construed to mean "husbandless," in view of the testator's probable intent *Page 10 
to keep the property from the husband's control and that the daughter, having procured a divorce, was entitled to have the trust ended (Rittenhouse v. Hicks, 10 Ohio Dec. Reprint 759;23 Weekly Law Bulletin 269) and such construction finds support in several cases cited in L.R.A. 1915 E. 762, but that it is not a universal construction appears from cases holding to the contrary, cited in 40 Cyc. 394.
It is the rule in this state that the intention of the testator is the law of wills and that when his intention is ascertained, if not in violation of the rules of law, it will prevail over technical rules and words in their technical or even ordinary meaning, but when the terms of the will are clear and unambiguous and the words used are not technical and have a common and ordinarily accepted meaning, the court will not say that the testator meant something different from what he said, unless his contrary intent is clearly manifest.
This will states plainly that a single event must happen to entitle Mrs. O'Leary to receive the principal of the trust and it explicitly describes that event as, "become a widow." The testator and his attorney who drafted the will, must have known the universally accepted meaning of those words and they used them with knowledge that Mrs. O'Leary was seeking a divorce and that the testator hoped and expected she would be successful. The testator must have known that a divorce would not make her a widow and yet with all the facts in his mind and in the mind of his attorney, he failed to say that she should have the fund if she divorced her husband and became "husbandless." I think that the evidence fails to support Mrs. O'Leary's contention and rather tends to strengthen the belief that the testator meant exactly what he said and that he used the word "widow" in its generally accepted sense. That the language used in the seventh clause was not fortuitous is shown by the eighth and eleventh clauses whereby, upon the happening of certain contingencies, an interest in two other trust funds is given Mrs. O'Leary under the same conditions and expressed in language practically identical with that used in clause seven.
It is argued that there can be no logical reason for believing that the testator would not want Mrs. O'Leary to possess *Page 11 
the trust when she was divorced and no longer under marital control or influence. The answer is that the testator had the right to dispose of his estate as he saw fit and it was competent for him to make distinction between divorce and widowhood, with or without reason. I might speculate that he had a reason for such distinction, namely, that notwithstanding he had disapproved of Mrs. O'Leary's marriage, she married the man he objected to and he feared, even if divorced, her former husband might retain some influence over her so long as he lived; or that they might become reconciled and remarry after divorce. However, I am not at liberty to guess whether the testator had logical reason for what he said. It is sufficient that he chose words in common use having a clear and settled meaning, in connection with a situation concerning which he was fully informed. Under those circumstances I can neither add to nor subtract from his words.Peoples National Bank v. Tipper, 100 N.J. Eq. 431; Scull v.Rosencrans, 104 N.J. Eq. 143; McDonald v. Clermont, 107 N.J. Eq. 585; Douglas v. Board of Foreign Missions, 112 N.J. Eq. 361.
The complainant is advised that Mrs. O'Leary is not, at this time, entitled to the principal of the trust created by the seventh clause of the will.