# THE PREROGATIVE COURT

OF

# THE STATE OF NEW JERSEY.

## FEBRUARY TERM, 1913.

EDWIN ROBERT WALKER, ORDINARY.

CARLOTTA HEATH, petitioner-respondent,

*v.*

FREDERICK R. MADDOCK, respondent-appellant.

[Decided March 27th, 1913.]

1. A petition by an infant *in propria persona* is irregular. A next friend must be joined, as an infant always sues by next friend.

2. The provisions of the Orphans Court act requiring guardians to file inventories and accounts within a prescribed time is merely directory. Non-compliance, unattended by fraud, gross neglect or indifference to duty, is not a cause for removal from office.

3. The misconduct of a guardian in the management of another trust estate upon an application to remove him from office, is relevant only to show general unfitness for fiduciary duty, and such misbehavior in that respect may not be invoked as a substantive cause for removal.

4. A guardian will not be removed where hostility exists between him and his ward, occasioned by the misbehavior of the ward.

On appeal from the Essex county orphans court.

Messrs. *Lum, Tamblyn & Colyer,* for the appellant.

Messrs. *Edward A. & William T. Day,* for the respondent.

WALKER, ORDINARY.

This is an appeal from an order of the orphans court of Essex county revoking letters of guardianship granted to the appellant of the person and property of the respondent, a minor. The proceedings were instituted by the respondent *in propria persona.* They ought to be amended by introducing a next friend, as an infant always sues by next friend. See *1 Dan. Ch. Pl. & Pr. 69.*

The ward, who will be twenty-one in June next, inherited $20,000 from her grandfather, which came into the possession of her guardian. She is also the residuary beneficiary of her grandmother's estate to the extent of $100,000 and upwards, which is to be enjoyed by her, when she arrives at the age of twenty-five years. After the death of her grandfather, the grandmother was appointed her guardian, who was succeeded by the appellant in December, 1906. Numerous circumstances are adverted to in the opinion of the court below, as manifesting that the guardian "has abused the trust and confidence reposed in him," some of which are unsupported by evidence, and others are not of a character sufficient to warrant a revocation. I have carefully read the testimony to discover, if possible, cause to justify removal, but without success.

At the time the appellant was appointed guardian, he was one of the executors and trustees of the estate of the grandmother of his ward. That this situation was concealed from the then presiding judge of the orphans court, and that consequently the letters were procured by fraud, is the opinion of the court below, but, as I view it, this conclusion is unsupported by the evidence. Indeed, a presumption, if permissible, prevails in favor of a full disclosure.

By the will of the grandmother, the appellant and his co-nominee were not only appointed executors and trustees, but were also constituted guardians of the respondent and enjoined

"that the greatest care be given to the moral training and education of my said granddaughter Carlotta C. Heath, and that she be brought up and instructed in the doctrines of the Methodist Episcopal Church."

It may fairly be assumed that in fixing the penalty of the guardianship bond, the court was fully apprised of the amount and source of the guardianship estate, the instrument by which it was brought into being, and the provisions thereof. And even though the court was in ignorance of the pending trust under the will, there is no reason for adversely criticising the appellant's acceptance of the guardianship. If, from the fiducial duality a conflict of interest and obligation arose, which seems remote, it is a necessary sequence of the course of conduct prescribed by the testatrix who created the trust estate, and of which the court would have taken heed and likely followed, had it been brought to its attention.

The appellant is further arraigned for having, as executor and trustee of the grandmother's estate, invested funds upon slender security by the purchase of mortgages aggregating $21,500, covering premises of which he was the owner, and for which he had then recently paid only $28,500. These mortgages were of the grandfather's investments and held by his widow and executrix as part of his estate. The purchase of the mortgages by the appellant and his co-executor was authorized by an order of the orphans court, presumably after full investigation. In the petition praying leave to make the investment, it was stated that the appellant was the owner. There is no testimony that the court was not informed of the consideration price paid for the land. In support of the petition two real estate dealers of good standing testified that in their opinion the premises were of the market value of $45,000 and upwards. At the hearing in this controversy a witness testified that the property was worth $50,000, which was not controverted. It was also made to appear that the assessment value for taxing purposes was $36,500. In view of these estimates the purchase price is of little or no moment. None of the circumstances attending the purchase are given, and no effort was made to challenge the appraisement, nor is there any contention that the estate suffered, nor proof offered that the fund at any time was in jeopardy.

The appellant as executor and trustee was charged with derelic-
tion of duty in failing to file an inventory and to account for
the estate, since his appointment in 1906. It is also alleged
against him that as guardian he has not accounted since 1908.
It does appear, however, that when the counsel for the minor
made demand, shortly before these proceedings were commenced,
the appellant promised an immediate compliance and promptly
accounted in the orphans court in both of the estates. No attack
is made upon the integrity of the accounts, nor is bad faith
alleged as a motive underlying the failure to account within the
time prescribed by the statute. In explaining his omissions, the
appellant says that he was prompted by a desire to protect the
estate from litigation threatened by a sister of the minor, which
came to his knowledge through a brother of the ward, shortly
after the grandmother's death. The grandmother's estate was a
large one, in which the ward fared vastly better than her brother
and sister. That his course was discreet and in the interest of
the estate is obvious. That it did not accord strictly with the re-
quirement of the statute is true, but it was not done in bad faith,
and my attention has not been drawn to any authority, nor have
I found one, in which a trustee, whether as guardian or in other
capacity, was removed from office for the reason that he failed to
account within the statutory period, without any other attendant
circumstances.

The provisions of the Orphans Court act requiring guardians
to file inventories and accounts within a prescribed time is merely
directory. A non-compliance, unattended by fraud, gross neglect
or indifference to duty is not a cause for removal from office.
*Pfefferle* v. *Herr, 75 N. J. Eq. (5 Buch.) 219; affirmed, 77 N. J.
Eq. (7 Buch.) 271.* The conduct of the appellant is free from
any such imputation. Upon two occasions, when he cautioned
her against extravagance, his ward asked him how much she was
worth. This was evidently by way of answering his comments,
and not in an effort to secure the information the query implied.
A few months before the present application, the appellant can-
vassed with Carlotta his record of securities, and of his adminis-
tration, but, because of her inexperience, she says she was unable
to comprehend him. When called upon by counsel to do so, he

promptly filed his accounts, which, so far as the testimony shows, are in nowise assailed.

The appellant is charged with wasting the decedent's estate. He had made his home with the grandmother of his ward for many years, and by her will the testatrix gave him the privilege of living in the homestead, with his ward, in the same manner, free of charge, until the latter attained her majority, provided he remained single. Two years before this action he married. His ward requested him to continue in, and to bring his wife into, the household. They lived together happily until about the time of the commencement of this litigation. The appellant contributed from $16 to $20 per week, about what it would cost outside for board, as he says, and his wife took the place of housekeeper, during the last year. It is urged that the infant's invitation is nugatory, and therefore its acceptance and enjoyment was a breach of the trust contained in the will. In a codicil to the will the testatrix gave the sole care and charge of the homestead, the hiring of servants, and the manner of living and of the education of her grandchild to the appellant, all of which was to be at the expense of the infant, and to last until she was twenty-four years of age. The discharge of this trust made it quite necessary that the appellant reside in, and be a part of, the household. Besides, this young girl, alone in the world, needed the protection which the appellant had extended to her for many years. Both parties realized this. The appellant consulted counsel as to his right, and the ward says that she had nothing else to do but to invite her guardian and his wife to live with her, because she was only seventeen years of age, and there was nobody else to direct her. The appellant acted with propriety. If, in the situation, he benefited at the expense of the estate, the remedy lies in an accounting, not in removal. *Pfefferle* v. *Herr, supra.*

These proceedings in a great measure deal with the manner in which the appellant administered the grandmother's estate from which is derived the bulk of the guardianship fund. His conduct in that connection is relevant in this controversy only to show general unfitness for fiducial duty, but his misbehavior, if any, in that respect, may not here be invoked as a substantive cause for removal.

It is claimed that a feeling of hostility exists between the guardian and ward, of such intensity, due to the former's misbehavior, as to render his further continuance in office inimical to a proper discharge of his trust. I cannot reconcile the evidence with this contention. The appellant, in early manhood, was adopted into the family of the ward's grandparents. He was taken into partnership with her grandfather, and succeeded to his business at his death. He had her grandmother's respect and confidence. Although of no relation, she in her will referred to him as her nephew. The love of the grandmother for her grandchild is expressed in her solicitude for her welfare, which, by her will, she, in an abundance of confidence, committed to the care of the appellant, whom she fondly called Fritz; and in her expiring moments she was consoled by a promise from him that he would never desert this grandchild until she was old enough to take care of herself. That he failed to fulfill this promise is not shown by the testimony.

From the death of the grandmother, in 1906, until two weeks before this suit was begun, the guardian and his ward lived in peace and harmony. Figuratively speaking, from him she received a paternal watchfulness of her temporal affairs, and a maternal devotion as to her spiritual welfare. The ward testifies that he was ever indulgent and generous towards her, and that she lived with him in happiness and comfort. This appears to have been interrupted by her imprudence and insolence. That her conduct was misguided and prompted by others is evident. When she instructed counsel to investigate her affairs, her guardian was forbearing, and, according to her testimony, told her that it was all right and that he did not mind. That his pride was wounded by the imputations and aspersions which attended her action is quite natural. He offered to, and did, meet her counsel, and asked for time sufficient to solemnly account for his stewardship, and tendered himself ready to resign in the event of a default being shown. He sought to ward off a reflection upon his honesty and a scandal to his name, but this was denied him. The ward testified that during the week following the receipt of a peremptory demand from her counsel for an accounting he treated her

coolly, just nodded to her when she came to the table. In an altercation which ensued she called him a liar, for which impertinence he reprimanded her, and his wife took her to task, which was followed by considerable asperity between the two women, but in which the guardian took no part, except to command the respondent to refrain from further insolence. The misbehavior on this occasion was that of the ward and not of the guardian. The doctrine set up in *Lister* v. *Weeks, 60 N. J. Eq.* (*15 Dick.*) 215, is not in point. Peace was restored and harmony again reigned in the family circle. This is the testimony of the respondent, supported by that of the appellant. Upon this incident is based the charge of hostility, which it is claimed destroys that harmony which ought to exist between guardian and ward, the absence of which makes necessary a dissolution of the relationship. That the ward has lost confidence in the integrity of her guardian I do not believe. Her statement that she has formed a distrust for him because of his not filing his account, and because of his manner and actions towards her after she asked for an accounting, is disingenuous. At the time of the altercation just noted, she said to him that she did not feel that he was dishonest. Nothing occurred thereafter, so far as the testimony shows, save this legal strife, to cause her to change her view. The confidence in and respect for her guardian, born of a lifetime of intimate friendship, was not so readily destroyed. The guardian protests that he bears her no ill will. He is a business man of prominence whose probity stands unimpeached in the record, which bespeaks for him a fealty to his trust to the end of his term. The ignominy of a removal ought not to be visited upon him.

The order revoking the letters is reversed, with costs, to be paid out of the estate.