6 N.J. Super. 352 (1950)
71 A.2d 381
HILDA RATTI, PLAINTIFF-APPELLANT,
v.
JOHN RATTI, JR., INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF JOHN RATTI, SR., DECEASED, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1950.
Decided February 17, 1950.
*353 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Charles M. Grosman, attorney for and of counsel with plaintiff-appellant, argued the cause.
Mr. Theodore J. Labrecque argued the cause for the defendant-respondent (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
*354 The opinion of the court was delivered by EASTWOOD, J.A.D.
Plaintiff, Hilda Ratti, appeals from a judgment of the Superior Court, Chancery Division, dismissing her complaint, wherein she sought to set aside the deed and release executed by her to her brother and a mortgage made by him to her, in connection with the settlement of the estate of her father, John Ratti, Sr. We find no error in the Chancery Division's determination.
John Ratti, Sr., died testate in 1937, leaving him surviving three children; Hilda Ratti, John Ratti, Jr., and Irene Ratti. Another daughter, Marion, had predeceased her father. Under the terms of his will dated February 11, 1931, John Ratti, Jr., was named executor thereof and was bequeathed and devised a one-half interest in his estate, his daughters, Hilda Ratti, the plaintiff, and Marion Ratti, each a one-quarter interest therein. The share of Marion, who was unmarried at the time of her death, became vested in Hilda Ratti, John Ratti, Jr., and Irene (hereinafter referred to as Hilda, John and Irene, respectively). As a result of extended negotiations between the parties, a settlement was agreed upon without a formal accounting by defendant as executor, whereby defendant's "Statement of Settlement" was approved and plaintiff and Irene Ratti executed and delivered to John an assignment of their interests in the estate, conveyances for their respective shares in the real estate, and a release discharging him as executor.
Plaintiff contends (1) that the subject of the transfer was trust property under defendant's control as trustee and his acquisition thereof was void; (2) that the alleged conveyances were procured by fraudulent misrepresentations as to the value and extent of the trust estate and the trial court's finding that the defendant did not commit fraud was palpably against the weight of the evidence; and (3) that she did not have independent legal advice "in the specific deal here involved." Defendant disputes plaintiff's allegations.
The only assets comprising decedent's estate were a bank account of $8.84 and two parcels of real estate, one a business property known as 5 West Main Street and the other the *355 family home known as 20 Hudson Street, both in Freehold, New Jersey. The business property was subject to a mortgage in the sum of $15,000 and the home to a mortgage of $4,000. The mortgage on the business property was in default and under foreclosure proceedings. Defendant's efforts to refinance the mortgage hinged upon settlement of the estate. $35,000 was agreed upon by the parties as the value of all of the real estate and John agreed to buy or sell on that basis. The plaintiff and Irene each agreed to sell and to accept a mortgage on the business property in satisfaction of their distributive shares. The settlement agreement was executed on January 27, 1939, in pursuance of which plaintiff and her sister, Irene, executed an assignment of their distributive shares of the estate, a deed for their interests in the real estate to John, a release and discharge to defendant as executor and an agreement subordinating their mortgages to the mortgage about to be placed for the purpose of refinancing the mortgage under foreclosure. Subsequently, on May 13, 1939, the mortgage was again refinanced and plaintiff, in compliance with her previous agreement, again executed a subordination agreement with respect to her mortgage. Payments were made by John on account of interest on the mortgage held by the plaintiff.
The trial court found that defendant had not misrepresented the value of the estate to the plaintiff; that she had accurate information concerning same; that she had retained an attorney to represent her; that he had apprised her of the facts; that the vital and material facts relied upon by plaintiff were untruthfully related by her and that the defendant did not violate any fiduciary duty or obligation in connection with the settlement agreed upon by the parties and the transactions consummating same.
The controversy also involved the ownership of a retail candy business which plaintiff alleged that John fraudulently claimed as his sole property, but which, she asserted, was owned by testator at his death. Plaintiff failed utterly to support her contention with any competent proof and we concur in the trial court's conclusion that, under the evidence. *356 John was the sole owner and operator of this business and had been for several years prior to the death of his father. With respect to this phase of the controversy, we quote with approval the trial court's comment: "A more detailed recital upon which this finding is predicated is unnecessary."
The real estate, of which decedent died seized, was devised by him to his children: John Ratti, Jr., Hilda A. Ratti and Marion Ratti. It is a well settled principle of law that title to realty vests in the heirs at law or devisees of decedent upon his death and not in the executor. McTamney v. McTamney, 138 N.J. Eq. 28 (Ch. 1946). We find no merit in plaintiff's contention that the real estate was trust property, and as such, under control of the defendant as executor.
We have carefully examined the record and fail to find any proof of fraud or misrepresentation on the part of the defendant. The questioned transactions represented a family settlement of the estate and the evidence establishes that its consummation was the result of negotiations extending over a lengthy period of time; that during the negotiations plaintiff retained independent counsel to advise her; that she received the statements of accounting and settlement from her brother and notification as to the time fixed for settlement and execution of necessary instruments to effectuate it; that she appeared at the settlement, examined the necessary documents and, after an explanation of the content and purpose thereof, duly executed them. A recital of the following excerpts of her testimony on cross-examination is most revealing as to whether she fully comprehended the content and purpose of the papers executed by her at the office of Mr. Finegold, attorney for defendant:
"Q. What did you do while you were there? Your memory is distinct as to what happened, is it? A. I remember this much: Sitting down and having Mr. Finegold ask me if I knew what I was signing. And I said `yes.' And I signed."

* * * * * * *
"Q. And he explained them to you, did he not? A. I dare say he did; I don't remember that.
"Q. And you didn't ask for any further explanation? A. No. I did not."
*357 Her sister, Irene, Mr. Finegold, Mrs. Mary B. Schanck, who took the acknowledgments, and Mr. Andrew J. Conover, attorney for Irene Ratti, testified they were present when the settlement papers were executed and that plaintiff examined same and indicated that she fully understood them before signing. She professes, among other things, that she did not understand that the bond and mortgage executed to her at the settlement were in satisfaction of her distributive share of the estate, notwithstanding the fact that she left it with Mr. Finegold for recording who, after it had been recorded, returned it to her, and that she retained its possession during the intervening years, producing it at the trial. Subsequently, she made demand upon John for payment of interest and arrearages of principal on the mortgage. Under this set of facts, it can hardly be said that plaintiff, who is a school teacher with a B.S. degree in Education, did not fully understand the nature and consequences of the transactions in question. An examination of her testimony convinces us that she had little or no regard for the truth. When it appeared to serve her purpose, she was evasive, inconsistent and downright untruthful. As the trial court found:
"* * * as far as the plaintiff is concerned no one who testified before me in the three days of the trial is telling the truth except herself. She has by innuendo, and on occasion by direct statement, accused Mr. Franks, Mr. Conover, Mr. Finegold and Mrs. Niemtzow, all reputable members of this Bar, of lying. She has as well accused her ex-husband, her brother and her sister and Mrs. Schenck of lying. For me to find for the plaintiff I would have to find that she and she alone told the truth."

* * * * * * *
"I find as a fact that on all of the vital or material facts upon which plaintiff must rely to succeed were untruthfully related to her."
Plaintiff's allegations that defendant fraudulently misrepresented the value of the estate is not supported by the evidence. She failed to offer any proof as to its value at the time of settlement or at any other time subsequent thereto. Her failure to offer such proof effectively disposes of this charge.
*358 Plaintiff's complaint might well have been dismissed on the ground of laches. Almost ten years ensued after the settlement and execution of all the papers before plaintiff instituted this action. The following quotation from the case of Lang v. Hexter, 137 N.J. Eq. 100 (Ch. 1945), at p. 104, is pertinent here:
"* * * There is * * * a principle in Chancery expressed by the maxim that `Equity aids the vigilant, not those who slumber upon their rights.' Vigilantibus, non dormientibus, jura subveniunt. The delay in the assertion and attempted enforcement of rights may from whatever cause be protracted for such a span of time that the proofs respecting the transactions out of which the rights are said to arise become by reason of the loss of informative testimony so indeterminate and obscure that it is impossible for the court to conscientiously resolve whether what is asserted to be justice to the complainant is not injustice to the defendant. * * *"
Plaintiff offered no satisfactory nor logical explanation of the long delay in instituting her suit that would justify its maintenance. When queried as to what she thought was the meaning of the papers she executed, she replied that the defendant had explained to her that it was necessary to have the papers executed so that he might take charge of the estate, although she knew he had qualified and had been acting as executor since September 1, 1937. She stated further that it was her understanding that the statement of settlement to which she affixed her signature of approval, was not a complete accounting of her brother's administration of the estate, because "he said that that was his authority to run the estate." In face of the proofs as to the circumstances leading up to and surrounding her execution of the settlement papers and the testimony of impartial witnesses with respect thereto, it is the height of absurdity for her to offer such a ridiculous and unfounded excuse for the prolonged delay in instituting her action. To permit her to succeed in her abortive attempt to collect further moneys from her brother would constitute irreparable injustice to him and an unwarranted reward to her.
The judgment of the Chancery Division is affirmed, with costs.