114 N.J. Super. 79 (1971)
274 A.2d 841
PAUL BARTEL, EXECUTOR UNDER THE WILL OF DANIEL L. CLARENBACH, DECEASED, PLAINTIFF,
v.
ETHEL CARNATHAN CLARENBACH, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 1, 1971.
*81 Mr. Paul Bartel for plaintiff.
Mr. Reginald F. Hopkinson for defendant (Messrs. Jeffer, Walter, Tierney, DeKorte, Hopkinson & Vogel, attorneys).
TRAUTWEIN, J.S.C.
There are two matters before the court. The first is an order to show cause why plaintiff should not distribute the remaining corpus of the estate of Daniel Clarenbach in accordance with plaintiff's informal accounting wherein defendant's residuary interest, which qualified for the marital deduction under 26 U.S.C.A. § 2056, was calculated after the deduction of federal taxes. The second is defendant's motion which seeks to compel *82 plaintiff, as executor of Daniel Clarenbach's estate, to file an inventory and settle an account. Defendant's motion also seeks to order plaintiff to comply with R. 4:88-1 (N.J. Court Rules, 1969) which rule would require an application for commissions on corpus and attorney's fees to be supported by an affidavit of services.
The facts material to a resolution of the issues are neither complex nor essentially conflicting. Plaintiff, who drew the will, is the attorney-proctor of the estate, the nephew and executor under the will of the deceased, Daniel Clarenbach, hereinafter "testator," and is also a substantial beneficiary. At the time testator made his will and at all times prior thereto he was unmarried. The will was executed on November 27, 1966. At some time prior to this event testator had been advised by plaintiff of the advantages of the marital deduction. Presumably this information was supplied so that testator could utilize it in the event he ever married and desired to include such provisions in his estate plan. A codicil to the will was executed on June 2, 1967 but did not change the residuary disposition as set forth in the will. Under the terms of the will and codicil testator made certain specific bequests and devices. The residuary estate was then bequeathed to 20 different persons, each of whom received a stated percentage of the residue. Among the residuary legatees 12 were relatives, 1 was an unnamed college, 2 were male friends, and 5 were what plaintiff described, chivalrously, as testator's "lady friends," of whom defendant Ethel Carnathan, later Clarenbach, was one. Including specific bequests and devices as well as her residuary interest, defendant has less than a 25% interest in the estate, whereas the combined interests of the other lady friends were greater than 25%. The will contained no provision for the payment of taxes.
Several years after the will was executed testator, at the age of 71 and after having had several heart attacks and at least one major operation, married defendant whom he had known for more than 40 years. There is nothing before the *83 court to indicate testator was of unsound mind at any time, nor is this an issue raised by the pleadings. This marriage appears to be a direct result of a doctor's advice to testator to the effect that it would be medically inadvisable for testator to live alone. Testator died approximately two months after his marriage. During the two-month period between marriage and death testator made several statements that indicated that he wanted to make certain changes in his will. There is nothing before the court that would remotely indicate the nature of the desired will changes. Indeed, testator neither changed his will nor made any arrangements to discuss such changes with his attorney.
On October 15, 1970, approximately two years after the death of testator, plaintiff sent to each beneficiary under the will an informal account. A release and refunding bond accompanied each copy of the account. The account in part stated:
When you sign the refunding bond and release, you release the executor from any further obligation to you in connection with the estate and you agree to return your proportionate share of any monies you have received in the event that the estate has not paid all its bills and does not have sufficient reserve to pay them.

* * * * * * * *
If any beneficiary prefers a formal accounting, please notify me as promptly as possible because in that case, I will have to withhold all payments until the accounting is approved.
Each beneficiary, including defendant, signed and returned to the plaintiff his or her release and refunding bond. Defendant had the instrument for approximately two weeks before she signed and returned it. Subsequent to the execution and return of the instrument, and either because she changed her mind or because she obtained the advice of counsel, defendant requested that plaintiff return the instrument to her. Plaintiff has continually refused to do this.
The question before the court is whether defendant's share of the residuary estate, which qualified for the marital deduction under 26 U.S.C.A. § 2056, should be calculated *84 before or after payment of the federal estate tax.[1] It is fundamental that in the absence of instructions to the contrary, the residuary estate is to be charged with the payment of federal estate taxes. Case v. Roebling, 42 N.J. Super. 545 (Ch. Div. 1956). This rule is limited to the extent set forth in Gesner v. Roberts, 48 N.J. 379 (1967); see also Dodd v. United States, 345 F.2d 715 (3 Cir.1965). In Gesner it was stated that "absent an express statement in the will, we should start with the assumption that the testator intended the maximum tax advantage for the estate and maximum benefit to the spouse within the limits of his gift to her." (Emphasis supplied). The limitation of Gesner, and N.J.S.A. 3A:25-33, which provides in pertinent part: "In the absence of directions to the contrary, * * * (ii) any deduction allowed under the law imposing the tax by reason of the relationship of any person to the decedent or by reason of the charitable purposes of the gift shall inure to the benefit of the fiduciary or transferee, as the case may be, * * *" should not be interpreted to mean that in every case, and absent any instructions to the contrary, the mere fact that a spouse's share of the residuary estate qualifies for the marital deduction automatically excludes it from paying its proportionate share of the federal estate tax imposed on the residuary estate. In re Burnett, 50 N.J. Super. 482, 495 (Cty. Ct. 1958), Surina v. Gilbert, 54 N.J. 68 (1969); Gesner v. Roberts, supra.
As stated in Gesner, the plan of a will may suggest that a testator did not intend the maximum benefit to his spouse or even to his estate. Such are the circumstances in the present case. Testator and defendant were not married when the will and codicil were made. Obviously testator could not have intended at that time to exonerate defendant's residuary interest from the payment of her proportionate share of federal estate taxes.
*85 At this point we reach a threshold problem  if a person is a residuary legatee under another's will and subsequently marries the testator, should the testator have to re-execute his will before the residuary legatee-spouse can take advantage of the Gesner assumption? The answer to this question is obviously in the negative. A will is ambulatory and speaks only as of the time of the testator's death. Miller v. Reich, 134 N.J. Eq. 28 (Ch. 1943); Dodd v. United States, supra. Thus, the residuary legatee's rights are determined at the time of testator's death and defendant should be granted the advantage of the Gesner presumption. This presumption, however, under Gesner is rebuttable.[2]
Again adverting to the plan of the will, it is seen that testator made several specific bequests and devises to the various unrelated and related persons. He then disposed of the residue of his estate to one unnamed college and to 19 persons: 12 of them related by blood to testator and 7 unrelated by blood, 2 of whom were male friends and 5 women friends. Testator knew of the marital deduction and had ample time before his death to include such provisions in his will. These facts repel the assumption in Gesner v. Roberts, supra, and fully demonstrate a plan whereby "the testator intended the beneficiaries to receive shares in the stated proportions and hence after the payment of taxes." Surina v. Gilbert, supra.
One area of factual conflict is emphasized by defendant. It relates to whether decedent intended to revise his will either before or after his marriage to her in order to take full advantage of the marital deduction. The ultimate fact is that he did not, and hence I find that such fact issue is not material.
The second and final question before the court is whether plaintiff should be compelled to submit a formal *86 accounting. It is not disputed that defendant received the copy of the informal account and release and refunding bond. This account was detailed. Reference to N.J.S.A. 3A:9-2 is here pertinent. It provides that an executor may settle his account in the Superior Court. This statute is directory and not mandatory. In re Tarby, 25 N.J. Super. 236 (Cty. Ct. 1953); Heath v. Maddock, 81 N.J. Eq. 469 (Prerog. 1913), aff'd 82 N.J. Eq. 366 (E. & A. 1913). Nonetheless, after studying the account defendant executed and returned the release and refunding bond to plaintiff. However, defendant professes that she did not fully comprehend the nature and effect of this document, did not understand the account, and shortly thereafter requested the return of the same, which request was refused. The general rule is that when all of the interested parties agree to an informal accounting and sign release and refunding bonds (defendant is the only beneficiary here challenging plaintiff), none of them can later compel the fiduciary to account formally. Maloney v. Kinkead, 130 N.J. Eq. 169 (Ch. 1940), aff'd 131 N.J. Eq. 111 (E. & A. 1941). This rule is limited in its application to those instances where fraud, misrepresentation, mismanagement, or undue influence of the fiduciary or a substantial misunderstanding by the legatee are not shown. Donnelly v. Ritzendollar, 14 N.J. 96 (1953); Ratti v. Ratti, 6 N.J. Super. 352 (App. Div. 1950); In re Tarby, supra; 7 New Jersey Practice (Clapp, Wills and Administration 3d ed.) § 1731.
Defendant complains of misunderstanding and mismanagement in three basic areas. First is the alleged improper inclusion in the gross estate of certain items which she characterizes as "insurance policies" payable directly to beneficiaries for the purpose of illegally inflating attorney's fees and commissions. Second is plaintiff's alleged negligence in failing to include other insurance policies in the inheritance tax returns, resulting in penalties. Third is a charge that the amount claimed by plaintiff for executors commissions and attorney's fees is excessive.
*87 N.J.S.A. 3A:10-1 and 2 provide comprehensive plans for the payment of commissions. These commissions are to be determined by the value of actual services rendered as well as by the trouble and risk involved in settling the estate. A formal application for fees or commissions, predicated upon an affidavit of service, is not in every instance mandated by either court rule or statute. N.J.S.A. 3A:10-8 and R. 4:88-1 and 4 merely provide that such application is mandatory in certain instances where an account is to be or has been settled by the court.
However, I conclude the facts in the instant case mandate an accounting. Plaintiff was the draftsman of the will, a blood relative of the testator, a substantial beneficiary under the will, the executor of the estate and an attorney for the estate. When plaintiff's many faces are added to the alleged areas of his mismanagement and defendant's alleged misunderstanding, it is amply demonstrated that defendant is entitled to some relief. In any event, a fiduciary should not be permitted to evade the statutory limitations on fees and commissions by simply settling his accounting informally. In allowing defendant relief the court is, in effect, opening the account which was settled informally by release and refunding bond. In doing this the entire account is not reopened. The opening of the account should be limited to those specific areas discussed above. Cf. Stevenson's Adm'rs v. Phillips, 15 N.J. Eq. 236 (Prerog. 1856); In re Kuser, 132 N.J. Eq. 260 (Prerog. 1942).
For the foregoing reasons it is ordered that defendant's share of the residuary estate pay its proportionate share of the federal estate tax imposed on the estate. Before doing so, however, the informal account is reopened to the extent that plaintiff is ordered to formally account in regard to the state transfer inheritance tax and federal estate tax and penalties imposed, fees and commissions charged and collected, and details of the treatment and handling of all alleged "insurance policies" as they relate to the estate administration. Defendant may then submit exceptions in this limited account within 30 days after receipt of the same.
NOTES
[1] For a detailed treatment of the marital deductions law, see Burnett; Surina v. Gilbert, and Gesner v. Roberts, infra.
[2] Obviously, if a testator marries a legatee, post will execution, and thereafter re-executes the will without a codicil covering death taxes, serious doubt would be generated respecting a right to the Gesner assumption.