# Richmond

ALICE CLAYTON PAPEN, INDIVIDUALLY, ETC., ET AL. V.
MARIE-BERTHE PAPEN.

April 23, 1976.

Record No. 750664.

Present, All the Justices.

*Dexter C. Rumsey, III (Ammon G. Dunton, Sr.; Dunton, Simmons & Dunton,* on briefs), for appellants.

*F. Warren Haynie, Jr. (Hyde & Haynie,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the court.

This appeal presents the question, of first impression for us, whether a will executed by a married man was revoked by the provisions of Code § 64.1-59 (Repl. Vol. 1973),[1] enacted after his divorce but before his death.

---

[1] Code § 64.1-59 (Repl. Vol. 1973), enacted as a part of Acts 1968, c. 656, provides as follows:

"If, after making a will, the testator is divorced a vinculo matrimonii, all provisions in the will in favor of the testator's divorced spouse are thereby revoked."

On August 27, 1940, in Maryland, Herman A. Papen executed his will, in which he devised and bequeathed his entire estate to his wife, Alice Clayton Papen, and appointed her executrix thereunder. Papen was awarded a divorce a vinculo matrimonii from his wife by decree entered by a Maryland court on October 8, 1947. In 1968 Code § 64.1-59 became effective, and in 1972 Papen died while domiciled in Virginia. On December 4, 1972, Papen's 1940 will was probated in the Clerk's Office of Northumberland County and, upon motion of Alice Clayton Papen, a Maryland resident, she and Dexter C. Rumsey, III, qualified as co-administrators, c.t.a., of the estate.

Subsequently, Marie-Berthe Papen, a resident of Belgium, filed her bill of complaint in the trial court against Alice Clayton Papen, individually, and Alice Clayton Papen and Dexter C. Rumsey, III, co-administrators, c.t.a., of the estate, as respondents (appellants herein), alleging that complainant was the sister and sole heir at law of Herman A. Papen, deceased, that the provisions in his will in favor of Alice Clayton Papen were revoked by Code § 64.1-59, and that his entire estate should pass to complainant under the intestacy laws of Virginia. Respondents, in their answer, denied that there was any revocation of the will. They have appealed from the final decree entered on February 18, 1975, in which the trial court ruled that the Papen will had been revoked by "operation" of Code § 64.1-59 and that decedent's sole heirs at law, whom the court did not identify, were entitled to the assets of the estate.

█ Appellants contend that the law, as it stood at the time of Papen's divorce, controls, and, since there was then no statute providing for revocation of a will as to a divorced wife, the will was not revoked. Such a conclusion is dictated, appellants insist, by *Wilson* v. *Francis*, 208 Va. 83, 155 S.E.2d 49 (1967).

In that case, we were concerned with former Code § 64-58, repealed in 1956, which provided that "[e]very will . . . shall be revoked by . . . marriage, except a will made in exercise of a power of appointment . . . ." The testatrix had executed her will and later married while § 64-58 was in effect, but died after the statute had been repealed. We held that the will had been revoked *eo instanti* upon the marriage, and that the law in effect when the marriage occurred, rather than the law in effect at the time of death, was controlling. We also held that the fact that a will is ambulatory and speaks as of the maker's death "does not preclude the General Assembly from enacting laws which revoke and declare a nullity an existing will upon the occurrence of a specified event such as marriage". *Id.,* 208 Va. at 87, 155 S.E. 2d at 51.

The will, having been revoked by marriage, was not revived by repeal of the statute, since this was not one of the methods of revival prescribed by law, and the repeal had no retroactive effect. *See* 53 Va. L. Rev. 1656, 1658 (1967); Lamb, Virginia Probate Practice, § 33, p. 86 (1957). *See also In re Estate of Stolte*, 226 N.E.2d 615 (Ill. 1967).

Revocation of a will by marriage had been considered in another context in the earlier case of *Patton* v. *Patton*, 201 Va. 705, 112 S.E.2d 849 (1960). There, after the decedent had made a will, his wife died. He remarried, was divorced and died before former Code § 64-58 was repealed. Noting particularly that the statute was still in effect at the time of his death, we held that the decedent's remarriage revoked his will.

Moreover, in *Timberlake* v. *State-Planters Bank*, 201 Va. 950, 115 S.E.2d 39 (1960), we held that, in determining whether a will has been revoked by a revocation clause in a subsequent will, the revocation clause speaks, not at the time of execution, but at the death of the testator. The revocation clause in question, having been destroyed with the subsequent will prior to the testator's death, was not effective to revoke the prior will. This decision had the effect of overruling *Rudisill* v. *Rodes*, 70 Va. (29 Gratt.) 147 (1877), in which it was held that an earlier will was revoked by a later will and was not thereafter revived by the intentional destruction of the later will.

*Timberlake* and *Wilson*, therefore, enunciate two distinct and dissimilar rules for determining the revocation of wills, depending upon the method of revocation. The *Timberlake* rule applies to revocation by subsequent testamentary act. The *Wilson* rule applies to revocation by subsequent specified non-testamentary act. *Wilson* holds that once revocation results from an act which, at the time it occurs, is sufficient to revoke, the will is dead and can only be revived by one of the methods prescribed by law. Thus, where there is a statute providing for revocation of a will upon divorce, a divorce obtained after the effective date of the statute will revoke any prior will, even if the statute should be repealed before the testator's death. In such cases revocation will be determined by the law in effect at the time of the divorce, rather than the law in effect at the testator's death. In the present case, appellants argue that, under the *Wilson* rule, the Papen will must be upheld because a will was not revoked by divorce under the law in effect when the Papens were divorced.

Appellee, on the other hand, maintains that revocation of the will should be determined by the law in effect at the date of Papen's death.

She relies primarily on *In re Ziegner's Estate*, 146 Wash. 587, 264 P. 12 (1928), holding that when a statute providing for revocation upon divorce was enacted after execution of a will and after divorce, as in the present case, revocation, because of the ambulatory nature of wills, was determined by the law in effect at death. Since the revocatory statute was in force at death the will was revoked by the divorce obtained prior to enactment of the statute. *See* 79 Am. Jur.2d § 587, pp. 693-94 (1975).

*Wilson* leads us to conclude that date of death determination is foreclosed where revocation depends upon divorce occurring either before or after enactment of the revocation statute. We are not persuaded, however, that where the divorce is obtained before the effective date of the statute, revocation is to be determined by the law in effect at the time of the divorce. We believe that revocation of the Papen will depends entirely upon the provisions of Code § 64.1-59. If that statute applies to antecedent as well as subsequent divorces, then revocation was completed on the effective date of the statute.

We are aware that generally statutes are to be given a prospective rather than a retrospective construction. *Ferguson* v. *Ferguson*, 169 Va. 77, 192 S.E. 774 (1937); Code § 1-16 (Repl. Vol. 1973).[2] *See also* Annot., 129 A.L.R. 859, 872 (1940). Nevertheless, a will is subject to change or revocation by the testator at any time, and gives no vested rights prior to probate. Moreover, as we recognized in *Wilson*, a will is subject to revocation and nullification by statute, under conditions specified by the General Assembly. Therefore, in the present case there are no rights or claims to activate Code § 1-16 or to require only prospective application of the statute providing for revocation of existing wills.

In enacting Code § 64.1-59 the obvious purpose of the General Assembly was to incorporate into statute the presumed intent of a testator that any provision in his will for the benefit of his spouse be terminated in the event of their divorce. The General Assembly was not precluded from making this presumed intent apply to all divorces of all testators thereafter dying, and not just to divorces obtained after the change in the law became effective. Indeed, if the statute is so construed, the resulting uniform, nondiscriminatory, and conclusive presumption of testamentary intent, universal in application and without

---

[2] Code § 1-16 (Repl. Vol. 1973) provides:

"No new law shall be construed to repeal a former law, as to . . . any act done . . . or any right accrued, or claim arising under the former law . . . or . . . before the new law takes effect . . . ."

prejudice to the rights or claims of anyone, would appear better to fulfill the legislative purpose than would a more restrictive construction.

We find nothing in the wording of Code § 64.1-59 to indicate any legislative intent that it be given limited application. It was a statutory declaration of public policy concerning wills of divorced testators, which provided, without condition, reservation, or qualification, that a divorced spouse is to be denied any benefits under a will executed prior to divorce. If the General Assembly had intended the statute to apply only to subsequent divorces it could have so stated. The General Assembly has been known to provide explicitly, where such is its intent, that a statute concerning wills shall not apply to any will made before the act became effective, *see, e.g., Raines* v. *Barker*, 54 Va. (13 Gratt.) 128, 130-31 (1856), or that a statute providing for distribution of a decedent's estate shall not apply to the estate of one dying before a specified date, as in Code § 64.1-101 (Repl. Vol. 1973).

Code § 64.1-59 merely shifts to the testator the burden of taking affirmative action to reverse the intent implicit in the law. The General Assembly, in evaluating the advisability of changing the law, undoubtedly concluded that the number of forgetful testators who would be benefited by the statute far exceeded the number of careful testators who might be inconvenienced by its enactment. We perceive no reason why the beneficial effect of the statute should be denied to those whose divorces have antedated its enactment.

Cases from other jurisdictions, holding that statutes providing for total or partial revocation of wills upon divorce do not apply to antecedent divorces, are readily distinguishable. In *Champaign County Bank and Trust Co.* v. *Jutkins*, 29 Ill.2d 253, 193 N.E.2d 779 (1963), the principal authority upon which appellants rely, it was held that the Illinois statute, because of its wording, did not apply to any will executed before the effective date of the statute. The statute provided that divorce revoked provisions of a will in favor of the divorced spouse "[u]nless the will expressly provides to the contrary . . . ." The court held that the statute did not provide a universal rule of partial revocation but afforded a testator a choice whether the statute should apply to his will. Consequently, the court concluded that the legislative intent was to make the statute applicable only to wills subsequently executed. To the same effect is *DeMars* v. *Slama*, 540 P.2d 119 (Nev. 1975). To the contrary, a Georgia revocation statute, applicable "in all cases", was held to apply to divorces obtained before

the statute became effective. *Friedman* v. *Cohen*, 215 Ga. 859, 114 S.E.2d 24 (1960).

We hold that Code § 64.1-59 applies to wills executed and divorces obtained before, as well as after, the effective date of the statute. Therefore, because of Papen's divorce, the Papen will was revoked by operation of Code § 64.1-59. As we find no reversible error in the final decree of the trial court, it is

*Affirmed.*