201 N.J. Super. 306 (1985)
493 A.2d 32
IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF BERNARD J. REILLY, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1984.
Decided April 30, 1985.
*308 Before Judges FRITZ, GAULKIN and LONG.
John L. Bonello argued the cause for appellant Eileen Budnik (Anschelewitz, Barr, Ansell & Bonello, attorneys).
Michael B. Kirschner argued the cause for respondents Kathleen A. Gilligan, Joan D. Amend, Jean A. McCabe and David Oakes (Magee, Kirschner & Graham, attorneys).
The opinion of the court was delivered by LONG, J.A.D.
On this appeal we have been asked to construe N.J.S.A. 3B:3-14, the statute which directs that the dissolution of a marriage shall revoke testamentary dispositions made to a "former spouse."
The case arose out of the following facts which are basically uncontroverted. On July 9, 1976, Bernard J. Reilly executed a will which left his entire estate to Eileen Budnik described in the will as "my fiancee", and appointed her his executrix. The following day he married her. The marriage foundered, and on March 23, 1978 a judgment was entered annulling the marriage and incorporating an interspousal agreement pursuant to which each party released all claims to the property of the other. *309 Reilly died on October 19, 1983 without having formally revoked or altered his will.
Thereafter, the will was offered for probate. On November 2, 1983, Kathleen A. Gilligan, Jean A. McCabe, Joan Amend and David Oakes, nieces and nephew of Reilly, filed a caveat claiming that the will was revoked by operation of law under N.J.S.A. 3B:3-14 when the marriage was annulled. The trial judge signed an order directing the nieces and nephew to show cause why the will should not be admitted to probate and issuing letters testamentary. Budnik was appointed temporary administrator. On the return date, she argued that N.J.S.A. 3B:3-14 does not apply to this case because the will was executed prior to the marriage and because the marriage and dissolution predated the enactment of the statute. Alternatively she urged that even if the statute is applicable it does no more than create a presumption of revocation refutable by proof of intent to the contrary. In support of this position she filed a certification containing facts which would support the view that Reilly intended her to continue as his beneficiary under the will.
In rejecting these contentions, Judge Selikoff held that N.J.S.A. 3B:3-14 was applicable and that evidence of intent to the contrary is rendered irrelevant by the statute. This appeal ensued. We are satisfied that Judge Selikoff's conclusions were correct, that the facts presented here are squarely encompassed by the act and that the will was properly denied probate. Thus we affirm.
N.J.S.A. 3B:3-14 provides:
If after having executed a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any dispositions or appointment of property made by the will to the former spouse, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, or guardian, unless the will expressly provides otherwise. Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent, and other provisions conferring some power or office on the former spouse are interpreted as if the spouse failed to survive the *310 decedent. A judgment from bed and board is a divorce for the purpose of this section. If provisions are revoked solely by this section, they are revived by testator's remarriage to the former spouse or by the revocation or suspension of a judgment of divorce from bed and board. No change of circumstances other than as described in this section revokes a will.
This section replicates Section 2-508 of the Uniform Probate Code (8 U.L.A. § 2-508, (1983)) in all significant details and is an example of the broader subject in the law of wills known as "revocation by operation of law." The gist of this statute is to incorporate into law the presumed intent of a testator that any disposition in a will benefitting a spouse should be terminated in the event of the dissolution of their marriage. In Matter of Estate of Bloomer, 620 S.W.2d 365 (Mo.Sup.Ct. 1981) the Supreme Court of Missouri, interpreting that state's enactment of Section 2-508 of the Uniform Probate Code, described its effect in terms equally applicable here:
The legislature decided that a divorce should wipe the slate clean as to the divorced spouse, without the testator having to go to the time and expense of making a new will. We can be sure that in almost every instance a divorced person does not desire a bequest to the former spouse to remain in effect. The legislature realized this, too, and wrote the statute to accomplish what was perceived to be the desired outcome in most divorces. [620 S.W.2d at 366.]
The adoption of N.J.S.A. 3B:3-14 in 1977 created a dramatic exception to the long standing policy of this state against implied revocation of wills. In re Garver, 135 N.J. Super. 578, 580 (App.Div. 1975); In re Schneider, 159 N.J. Super. 202, 204-206 (Cty.Ct. 1978); Murphy v. Markis, 98 N.J. Eq. 153 (Ch. 1925), aff'd o.b. 99 N.J. Eq. 888 (E. & A. 1926). In accordance with that policy, the prior statutory scheme provided that a will could be revoked only by "burning, cancelling, tearing or obliterating, execution of a new will or codicil, or by written revocation executed in the same manner as required for a will." N.J.S.A. 3A:3-3. Dissolution of a marriage did not revoke provisions in favor of a former spouse. In re Garver, 135 N.J. Super. at 580. After dissolution, the testator had an affirmative burden in order to effect such revocation. Murphy v. Markis, supra. That burden was shifted by N.J.S.A. 3B:3-14. Now revocation occurs as a matter of law upon dissolution of the marriage and *311 the burden devolves upon the testator to effect revival in one of the prescribed modes: by remarriage to the former spouse, invalidation of the judgment of divorce, re-execution of the will or execution of a codicil. N.J.S.A. 3B:3-14, 15. Here Budnik's marriage to Reilly was dissolved. He never undertook any of the acts prescribed by N.J.S.A. 3B:3-14 or 15 to effect revival. Under our reading of the statute, the devise to Budnik was therefore revoked by operation of law.
In opposing this conclusion, Budnik first claims that because the execution of the will and the annulment of the marriage predated the effective date of the statute it should not apply. On its face, N.J.S.A. 3B:1-8, a general provision in the new probate law, compels an opposite conclusion. That statute mandates the applicability of the provisions of Title 3B to the "wills of all decedents dying on or after September 1, 1978." The date of Bernard Reiley's death falls well within this qualifying language, and it is that date which triggers the operation of the statute here. Budnik misconceives the death trigger as having the effect of a retroactive application of the statute. This argument overlooks the established rule that a will ordinarily is ambulatory and speaks only as of the death of the testator. In re Fernandez, 173 N.J. Super. 240 (Law Div. 1980); Bartel v. Clarenbach, 114 N.J. Super. 79, 85 (Ch.Div. 1971); Varick v. Smith, 69 N.J. Eq. 505, 512 (Ch. 1905). The good sense of such a rule was explained by the court in In re Fernandez where a similar retroactivity argument was made with respect to another aspect of the new probate code:
The logic of principle that a will speaks as of the death ... points strongly towards holding that the new statute which diminishes the requirements for will execution is controlling. Even more persuasive is the fact that N.J.S.A. 3A:2A-1 et seq. is a comprehensive revision of New Jersey probate law designed to simplify and facilitate the making of wills and administration of estates. Were there to be a holding that its execution provisions applied only to wills made after the effective date of the statute, the benefits of the new law would be denied to all those who executed wills before September 1, 1978. It is not conceivable that the Legislature had any such intention. Cases such as those cited above, which take the view that a subsequent statute has no retrospective application, do so on the theory that vested interests are created *312 by the will. In my view this is completely inconsistent with the settled law in this State that a will is ambulatory. It would be anomalous to follow such precedents in this State. [173 N.J. Super. at 248.]
Although the issue of retroactivity in the case of revocation by operation of law has not previously been litigated in New Jersey, several other jurisdictions which have adopted Section 2-508 of the Uniform Probate Code have addressed this issue and have uniformly rejected the retroactivity claim. Buehler v. Buehler, 67 Ohio App.2d 7, 21 Ohio Op.3d 330, 425 N.E.2d 905 (Ct.App. 1979); Papen v. Papen, 216 Va. 879, 224 S.E.2d 153 (Sup.Ct. 1976). The court in Papen explained its reasoning this way:
In enacting Code § 64.1-59 the obvious purpose of the General Assembly was to incorporate into statute the presumed intent of the testator that any provision in his will for the benefit of his spouse be terminated in the event of their divorce. The General Assembly was not precluded from making this presumed intent apply to all divorces of all testators thereafter dying, and not just to divorces obtained after the change in the law became effective. Indeed, if the statute is so construed, the resulting uniform, nondiscriminatory, and conclusive presumption of testamentary intent, universal in application and without prejudice to the rights or claims of anyone, would appear better to fulfill the legislative purpose than would a more restrictive construction.
We find nothing in the wording of Code § 64.1-59 to indicate any legislative intent that it be given limited application. It was a statutory declaration of public policy concerning wills of divorced testators, which provided, without condition, reservation, or qualification, that a divorced spouse is to be denied any benefits under a will executed prior to divorce. If the General Assembly had intended the statute to apply only to subsequent divorces it could have so stated. [224 S.E.2d at 155.]
We are in accord with this view.
Budnik next contends that the fact that the will preceded the marriage exempts it from the operation of the statute altogether. On its face, the statute makes no such distinction. Only two things are necessary in order for it to apply: a will executed by the testator and a subsequent divorce or annulment. Both elements are present here. There is thus no warrant to limit the statutory language to one who was a spouse at the time the will was executed. The scheme, as we perceive it, focuses on the termination of the marriage and not on the status of a spouse at the time the will was made, with *313 the result that the sequence of the will and the marriage is irrelevant.
As with the retroactivity issue, this issue is novel in New Jersey, but the courts of several other jurisdictions have considered it under Section 2-508 of the Uniform Probate Code. These courts have concluded as we do here that the sequence of the will and the marriage is irrelevant. Russell v. Johnston, 327 N.W.2d 226, 228 (Iowa Sup.Ct. 1982); Matter of the Estate of Bloomer, 620 S.W.2d 365 (Mo.Sup.Ct. 1981); McFarlen v. McFarlen, 536 S.W.2d 590 (Tex. Ct. App. 1976). See also Conascenta v. Giordano, 143 So.2d 682 (Fla. Dist. Ct. App. 1962) cert. den. 149 So.2d 48 (Fla.Sup.Ct. 1962). The Iowa Supreme Court in Russell v. Johnston soundly observed:
The clear purpose of section 633.271 is to provide an automatic revocation of provisions in a will in favor of a spouse after a marriage is dissolved. The legislature obviously recognized that due to the change in the family structure new moral duties and obligations may have evolved subsequent to the execution of the will, and that due to the turmoil of a dissolution an automatic revocation is in the best interest of the testator. Certainly, the purpose for which the statute was enacted is equally applicable to a testator's spouse whether she is married before or after the execution of the will.
We conclude that the legislature intended that pursuant to section 633.271 any provision in a will in favor of a former spouse of a decedent is to be revoked when there is a divorce or dissolution of marriage prior to death. We hold that this provision is equally applicable when the marriage of the parties takes place after the execution of the will. [327 N.W.2d at 229.]
Budnik relies on Younker v. Johnson, 160 Ohio St. 409, 116 N.E.2d 715 (Sup.Ct. 1954), Codner v. Caldwell, 156 Ohio St. 197, 101 N.E.2d 901 (Sup.Ct. 1951) and Charlton v. Miller, 27 Ohio St. 298, 22 Am.Rep. 307 (Sup.Ct. 1875) in support of the proposition that the sequence of the will and the marriage is critical to a determination whether an implied revocation had occurred as a result of a divorce. Those cases did not involve Section 2-508 of the Uniform Probate Code and revocation by operation of law. While the chronology of events may well have some bearing on the question of implied revocation, it is simply irrelevant to the provisions of N.J.S.A. 3B:3-14.
*314 Finally, Budnik urges that N.J.S.A. 3B:3-14 should be read in connection with N.J.S.A. 3B:3-13, which requires an inquiry into the intent of the testator in cases of purported revocation by burning, tearing, cancellation, obliteration or destruction. This suggestion is without merit. While the Legislature specifically required a determination of intent in N.J.S.A. 3B:3-13, N.J.S.A. 3B:3-14 contains no such provision. Rather, it codifies what in effect, is a conclusive presumption that, in the absence of a revival technique countenanced by N.J.S.A. 3B:3-14 or 15, a testator does not intend to benefit one who becomes his former spouse through the dissolution of their marriage. This is the very meaning of the concept of "revocation by operation of law." As Judge Selikoff aptly observed, it renders evidence of contrary intent on the part of the testator irrelevant.
Affirmed.