**ESTATE OF Joseph E. RIDENOUR, Deceased, James R. Ridenour, Executor, Petitioner–Appellee,**

v.

**COMMISSIONER OF The INTERNAL REVENUE SERVICE, Respondent–Appellant.**

No. 93–2237.

United States Court of Appeals, Fourth Circuit.

Argued May 13, 1994.

Decided Sept. 21, 1994.

**ARGUED:** Teresa Thomas Milton, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellant. Benham Mitchell Black, Black, Noland & Read, Staunton, VA, for appellee. **ON BRIEF:** Michael L. Paup, Acting Asst. Atty. Gen., Gary R. Allen, Kenneth L. Greene, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellant.

Before ERVIN, Chief Judge, MICHAEL, Circuit Judge, and CHAPMAN, Senior Circuit Judge.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion in which Judge MICHAEL and Senior Judge CHAPMAN joined.

## OPINION

ERVIN, Chief Judge:

Joseph Ridenour executed a durable power of attorney in 1971 appointing his only child, James Ridenour, as his attorney-in-fact. When that power of attorney could not be located, Joseph executed a second durable power of attorney on January 12, 1987, again appointing James as attorney-in-fact. Joseph became ill in late 1986 and by March 20, 1987, he could no longer effectively communicate with others. On March 27, 1987, James, acting pursuant to the power of attorney, made gifts by writing nine checks on Joseph's account in the amount of $9,500 each to himself, his wife, his four children and his three grandchildren. Joseph died on April 15, 1987 of congestive heart failure.

On the federal estate tax return filed for Joseph's estate on January 15, 1988, the $85,000 in gifts was not included in the gross estate. On January 4, 1991, the Commissioner of Internal Revenue issued a notice of deficiency to the estate, which the estate contested by filing a petition with the United States Tax Court. While this suit was pend-

ing before the Tax Court, the Virginia legislature enacted Va.Code Ann. § 11–9.5 (Michie Supp.1992), providing that such gifts are not revocable and therefore not includable in the gross estate. The Tax Court rendered its decision on June 24, 1993, finding that the statute controlled and that the amount of the gifts was not includable in the gross estate. The Commissioner appeals that decision. For the reasons set forth below, we affirm.

## I.

Joseph Ridenour was born in 1906 and married his wife Catherine in 1929. The couple moved to Staunton, Virginia in 1939 and lived there until their deaths. Catherine died on July 18, 1982. They had one son, James, born in 1931. James married Patricia in 1952 and they live in Staunton with their four children. James has three grandchildren, the great-grandchildren of Joseph and Catherine. Joseph had very close relationships with the members of his family.

In 1955, Joseph, James and W.L. Hall, a close friend of Joseph's, formed Valley Oil Corporation. Joseph was the principal shareholder, with James and Hall also owning shares. When Hall died in the early 1960s, his shares were purchased by the company as treasury stock. All stock in Valley Oil has been owned by Joseph and his descendants since that time.

Beginning in 1955, Joseph employed Layton Yancey, later Yancey and Anderson, as his CPA for accounting and tax planning purposes. Joseph regularly conferred with his accountants and actively sought ways to minimize his tax obligations. His tax planning extended to his estate planning. He revised his will and executed three codicils to take advantage of various tax provisions.

On May 28, 1971, Joseph executed a power of attorney appointing James as his attorney-in-fact. The initial grant in the power was a general grant which read

KNOW ALL MEN BY THESE PRESENTS, That I, J.E. Ridenour, sometimes known as Joseph Elmer Ridenour, do hereby make, constitute and appoint my son, J.R. Ridenour my true and lawful attorney-in-fact, for me and in my name, place, and stead to do, execute and perform all and every act, matter and thing, in law or in the judgment of my said attorney needful or desirable to be done in relation to all or any part of my property, estate, affairs, and business of any kind or description, as fully and amply, and with the same effect, as I, myself, might or could do if acting personally.

J.A. 46. The general grant of authority was followed by the provision that "[w]ithout limiting the generality of the foregoing," the attorney-in-fact was empowered to perform any of the various listed acts that follow. When this power of attorney could not be located, Joseph executed a second durable power of attorney on January 12, 1987 granting James the same powers.

Joseph had a history of making gifts to his family that were in part tax driven. He gave his wife real estate and certain life insurance policies with a cash value of $4,924.49; he gave James several gifts of Valley Oil stock totaling over $100,000; he gave his grandson James, Jr. stock worth over $30,000; he gave each of his other grandchildren stock worth over $9,000; he gave cash gifts to his sister ($2,500) and to James, Jr. ($3,500); and he regularly gave Christmas and birthday gifts to his son, daughter-in-law, grandchildren and great-grandchildren.

Joseph suffered from acute renal failure due to congestive heart disease and by March 20, 1987 he could no longer effectively communicate with others. Acting pursuant to the power of attorney, James made gifts from Joseph's checking account of $9,500 to himself, his wife, his four children and his three grandchildren. James made the gifts to the natural objects of Joseph's bounty to reduce the gross estate and minimize estate taxes. James wrote the checks on March 27, 1987. Joseph died on April 15, 1987.

Joseph's estate filed a federal estate tax return on January 15, 1988, reporting a gross estate of approximately $1,200,000. The $85,000 in gifts made March 27, 1987 were not included.

## II.

Internal Revenue Code Section 2038 provides that revocable transfers are includable

in a decedent's gross estate. 26 C.F.R. § 20.2038–1. The Commissioner argues that because Joseph's power of attorney did not contain an express gift power, the gifts made by James were revocable and therefore must be included in the gross estate. The Commissioner finds support for that position in this court's decision in *Estate of Casey v. Commissioner,* 948 F.2d 895 (4th Cir.1991). Because no Virginia court had addressed the question posed in *Casey* whether gifts made pursuant to powers of attorney that lack a specific gift power are revocable, this court's opinion was based on a prediction concerning how the Virginia Supreme Court would resolve the question. *Id.* at 898 (citing *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967)). In that case, we determined that the power of attorney contained no express gift power and that the gifts were revocable and includable in the gross estate.

The Commissioner asserts that *Casey* is in conflict with Va.Code Ann. § 11–9.5 (Michie Supp.1992), enacted the year after *Casey* was decided. The statute specifically provides for an implied gift power in a power of attorney that grants broad general powers, making such gifts irrevocable. See Section II.B, *infra.* The Commissioner maintains that because *Casey* was decided closer in time to the date of the gifts in question, it controls. The tax court refused to rely on *Casey,* finding that the statute was intended to have retroactive effect and therefore controls. We must decide whether the Virginia statute has retroactive effect and whether it is in conflict with *Casey.* Because we find that the statute and *Casey* can be reconciled, with the statute expanding and clarifying the holding of the case, we begin our analysis with this court's decision in *Casey.*

### A.

In *Casey,* this court found that the Virginia Supreme Court might well adopt a flat rule that an unrestricted power to make gifts would not be found in a durable power of attorney that does not expressly grant such power. We recognized, however, that "the Virginia Court may not be disposed to go so far as to adopt such a flat rule, even if

confined to durable powers." *Casey,* 948 F.2d at 899. This court therefore found that the appropriate method to resolve the question was to review the complete text of the particular instrument and the circumstances of its execution to determine whether we could infer in it a power, though unexpressed, to make the gifts at issue. *Id.* at 899–900. *Casey* thus stands for the proposition that to infer an implied gift power, the court must look to the intent of the person granting power of attorney.

■ While we found that the instrument and circumstances involved in *Casey* did not indicate the principal's intent to confer a gift power on the attorney-in-fact, the evidence does support such an intent in the present case. The power of attorney in *Casey* used language limiting the powers granted to business transactions. The authorization "to lease, sell, grant, convey, assign, transfer, mortgage and set over to any person, firm or corporation" any of the principal's property was immediately qualified by the phrase "for such consideration as [the attorney-in-fact] may deem advantageous." *Id.* at 901. Also, the grant of general power following the specific list of powers conferred did not contain any provision to safeguard its generality; it was interpreted to provide only incidental, interstitial powers necessary to carry out the specific powers. *Id.*

Furthermore, we found in *Casey* that the principal's pattern of making gifts did not support an intent to confer a gift power on the attorney-in-fact. We found that the principal, a woman whose property in large part consisted of a dower interest in her husband's property, had made previous gifts under very different circumstances. Her gifts had been mere releases of her dower interest at a time when she had no separate estate upon which she was solely dependent. Her financial well-being at the time of the gifts was dependent on her husband, who was still alive. *Id.* at 901. We found that when she executed the power of attorney, she must have assessed the uncertainty of her husband continuing to provide for her and must have determined that she needed to protect herself; she therefore could not have intended

to confer a gift power on her attorney-in-fact. *Id.* at 901–02.

These circumstances are clearly distinguishable from Ridenour's case. The power of attorney executed by Joseph contains no language limiting the authority to business transactions or requiring consideration in exchange for the attorney-in-fact's disposition of property. Also, the grant of general power precedes the list of specific powers, which begins with the phrase "[w]ithout limiting the generality of the foregoing," preserving the broad grant of authority initially conferred. Finally, Joseph's pattern of giving gifts reveals a person well aware of the tax benefits associated with distributions of his assets. Joseph granted James broad, unencumbered power to manage his affairs in any way he might do so personally; all indications are that Joseph would have been likely to make the gifts himself had he been capable of doing so. Looking at the complete text of the instrument and the circumstances surrounding its execution, we can infer that Joseph intended to permit James to make gifts as Joseph would do personally.

Following *Casey,* we thus find support for the Tax Court's conclusion that Joseph intended to give James the power to confer gifts.

### B.

■ Virginia's General Assembly passed, and the governor signed, Va.Code Ann. § 11–9.5 (Michie Supp.1992) on March 30, 1992. The statute provides in part:

§ 11–9.5. Gifts under power of attorney.—

A. If any power of attorney or other writing (i) authorizes an attorney-in-fact or other agent to do, execute, or perform any act that the principal might or could do or (ii) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs or deal with the principal's property, the attorney-in-fact or agent shall have the power and authority to make gifts in any amount of any of the principal's property to any individuals or to organizations described in §§ 170(c) and 2522(a) of the Internal Revenue Code or corresponding future provisions of federal tax law, or both, in accordance with the principal's personal history of making or joining in the making of lifetime gifts.

The Virginia General Assembly also provided that this section is "declaratory of existing law." 1992 Va. Acts ch. 544. The statute thus clarifies the standard set in *Casey* by requiring examination of whether the power of attorney "evidences the principal's intent to give the attorney-in-fact or agent full power...." Va.Code Ann. § 11–9.5. Like *Casey,* the statute also looks to intent by examining the entire instrument and surrounding circumstances. The statute merely clarifies that a court may infer a gift power when one is not explicitly set forth.

The question in this case, then, is whether the statute enacted in 1992 applies retroactively to gifts made in 1987. The tax court answered this question affirmatively, and we agree.

The Virginia Supreme Court has held

there can be no doubt that the legislature possesses the power to enact retrospective legislation, and generally it is valid if the legislative intent is plainly manifest that the statute is to have a retroactive effect and if the statute does not have the effect of impairing the obligation of a contract and is not destructive of vested rights.

*Hagen v. Hagen,* 205 Va. 791, 139 S.E.2d 821, 824 (1965). It is not necessary for the statute to expressly state that it is to operate retrospectively; the language may indicate that it is to apply to the past as well as the future. *Id.*

In this case, the General Assembly stated that § 11–9.5 is "declaratory of existing law." While the legislature can only make law and cannot declare what the existing law is, the statement by the General Assembly clearly evidences an intent for the statute to be applied retroactively. The only way to avoid that conclusion is to ignore the statement altogether. An interpretation of retroactivity is much closer to the expressed intent of the legislature. Because applying the statute to the power of attorney will not impair any contractual obligation or destroy any vested rights, we find that the statute has retroactive effect.

Finding that § 11–9.5 is to be applied retroactively, the next question becomes whether it retroactively validates only implied gift powers in powers of attorney executed before enactment, or actual gifts made before enactment as well. For the reasons set forth below, we find that the statute validates both gift powers and actual gifts.

The Virginia Supreme Court in *Papen v. Papen*, 216 Va. 879, 224 S.E.2d 153 (1976), was faced with the question of whether a statute revoking provisions in a will in favor of a spouse upon divorce applied to a will executed and a divorce obtained prior to the effective date of the statute. The court gave the statute retroactive application to a divorce that occurred over twenty years prior to enactment. It noted that the obvious purpose in enacting the revocation statute was to incorporate "the presumed intent of a testator that any provision in his will for the benefit of his spouse be terminated in the event of their divorce." *Id.* 224 S.E.2d at 155. The court found that the legislature was not precluded from making this presumed intent apply to all divorces, not just to divorces obtained after the enactment of the statute. This interpretation established a "uniform, nondiscriminatory, and conclusive presumption of testamentary intent, universal in application and without prejudice to the rights or claims of anyone," and better fulfilled the legislative intent than would a more restrictive construction. *Id.*

This holding has obvious import for the question at hand. In enacting the gift statute, the General Assembly likewise incorporated the presumed intent of principals to permit their attorneys-in-fact to make gifts pursuant to the broad, general powers expressly provided. As the revocation statute applied not only to wills made but also to divorces obtained prior to the statute's enactment, the gift statute likewise applies not only to powers of attorney executed but also to gifts made before the effective date of the statute.

Because the statute applies to gifts made prior to the enactment of the statute, the gifts made by James are irrevocable and not includable in the gross estate. The decision of the Tax Court is affirmed.

*AFFIRMED.*