973 A.2d 387 (2009)
408 N.J. Super. 48
Ronald HADFIELD and Sonia E. Hadfield, Individually and on behalf of the Estate of Ryan Ronald Hadfield, Deceased, Plaintiffs-Respondents,
v.
The PRUDENTIAL INSURANCE COMPANY, Defendant, and
Rose Ann Lillo, Defendant-Appellant.
No. A-5140-07T1
Superior Court of New Jersey, Appellate Division.
Argued May 19, 2009.
Decided June 16, 2009.
Frank P. Arleo argued the cause for appellant (Arleo, Donohue & Biancamano, attorneys; Mr. Arleo and Jo Ann K. Dobransky, Tinton Falls, on the briefs).
Barry J. Gainey, Midland Park, argued the cause for respondents (Gainey & McKenna, attorneys; Mr. Gainey, on the brief).
Before Judges WEFING, PARKER and LeWINN.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Defendant Rose Ann Lillo appeals from orders entered by the trial court denying her motion for summary judgment and entering summary judgment in favor of plaintiffs and denying her subsequent motion for reconsideration. After reviewing the record in light of the contentions advanced on appeal, we affirm.
Plaintiffs are Ronald Hadfield and Sonia E. Hadfield, parents of Ryan Hadfield, *388 now deceased. Ryan was employed as a detective with the Hudson County Prosecutor's Office and as such was a member of the Police and Firemen's Retirement System ("PFRS"). As a member, he was insured under a group life insurance policy issued by defendant Prudential Insurance Company of America ("Prudential"). In his initial enrollment application dated November 5, 1999, he named his sister, Shelby Strassheim, as the beneficiary of this policy.
In November 2002, Ryan married defendant, and in February 2003, he named her as the beneficiary of his group life insurance. He left his sister as the contingent beneficiary. Defendant also had life insurance, and she named Ryan as the beneficiary under her policy.
In December 2003, defendant, acting pro se, filed a complaint for divorce. Ryan did not contest the matter, and a judgment of divorce was entered on April 13, 2004. The judgment contains the handwritten notation, "Plaintiff's waiving alimony permanently."
Ryan died on March 15, 2006, not having changed the beneficiary designation on his life insurance policy. Defendant, who by this time had remarried, claimed she was entitled to the proceeds. She contended that her divorce from Ryan had been amicable and that they had agreed that each would maintain the other as the beneficiary on their respective life insurance policies until either married, in which event the new spouse would be named as the beneficiary. Plaintiffs disputed that assertion. They said that Ryan had in fact tried to remove defendant as his beneficiary and replace her with his sister but had completed the forms incorrectly. Prudential deposited the disputed funds into court, and the parties litigated their claims.
After a period of discovery, the parties filed cross-motions for summary judgment, plaintiffs arguing that they should prevail under N.J.S.A. 3B:3-14, and defendant contending the statute was inapplicable. The trial court found in plaintiffs' favor and this appeal followed.
At the time defendant and Ryan were married and were divorced, N.J.S.A. 3B:3-14 provided in pertinent part:
If after having executed a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any dispositions or appointment of property made by the will to the former spouse... unless the will expressly provides otherwise.
The Legislature amended this statute, effective February 27, 2005, so that it now provides in pertinent part:
Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals ... a divorce or annulment ... revokes any revocable... dispositions ... made by a divorced individual to his former spouse in a governing instrument. ...
. . . .
In the event of a divorce or annulment, provisions of a governing instrument are given effect as if the former spouse ... disclaimed all provisions revoked by this section. ...
At the same time, the Legislature amended the definition of a governing instrument contained in N.J.S.A. 3B:1-1 to include a life insurance policy. The Senate Judiciary Committee Statement explained that the amendment to N.J.S.A. 3B:3-14 would "revoke ... non-probate transfers occurring by reason of the decedent's death to the former spouse." L. 2004, c. 132 (Statement by the Senate Judiciary Committee).
*389 Defendant presents several arguments in support of her position that N.J.S.A. 3B:3-14 does not control the disposition of these insurance proceeds. She first contends that the statute is wholly inapplicable; she asserts that the governing statutes are those controlling PFRS, N.J.S.A. 43:16A-1 to -68. We disagree.
N.J.S.A. 3B:3-14 does not contain any language which would limit its scope in such a manner; nor does N.J.S.A. 3B:1-1 exclude from the definition of "governing instrument" a policy issued under PFRS. In addition, nothing within N.J.S.A. 43:16A-1 to -68 indicates a legislative intent to treat a PFRS group policy in a manner different than any other such policies. We can perceive no reason in logic or policy which would warrant exempting a PFRS policy from N.J.S.A. 3B:1-1.
Defendant also contends that N.J.S.A. 3B:3-14 in its present formulation does not apply to this matter because, although in effect on the date of Ryan's death, it was not in effect on the date of their divorce. Again, we do not agree.
Our research has not disclosed a reported case which has addressed this precise question. In our judgment, In re Will of Reilly, 201 N.J.Super. 306, 493 A.2d 32 (App.Div.1985), provides guidance.
The Reilly case concerned a will that was executed by Bernard J. Reilly on July 9, 1976, in which he left his entire estate to his fiancée, Eileen Budnik. He married Ms. Budnik the following day, July 10, 1976. That marriage was ultimately annulled on March 23, 1978, and Reilly died some five years later, in 1983, without having changed his will. Id. at 308-09, 493 A.2d 32. N.J.S.A. 3B:3-14, originally affecting only wills, came into effect in 1982, but another provision within the probate statutes stated that N.J.S.A. 3B in its entirety applied to testator deaths occurring after September 1, 1978. Reilly, supra, 201 N.J.Super. at 311, 493 A.2d 32. Thus, a similar situation to this case was presented: a will naming a former spouse as a beneficiary remained unchanged after an annulment; the annulment occurred before the statute's effective date and the testator's death occurred after the effective date.
The former spouse in Reilly, seeking to take under her annulled ex-husband's will, argued that N.J.S.A. 3B:3-14 did not apply because the marriage was annulled before the effective date of that statute. Reilly, supra, 201 N.J.Super. at 309, 493 A.2d 32.
This court ruled that N.J.S.A. 3B:3-14 applied despite the fact that the annulment predated the effective date of the statute. This court held that Reilly's will in favor of Budnik had been revoked by operation of law. Reilly, supra, 201 N.J.Super. at 312, 493 A.2d 32.
Other jurisdictions have also ruled in this manner. This court in Reilly cited to the Virginia Supreme Court, which held that Virginia's revocation statute applied to divorces that occurred before the effective date of the revocation statute where the death occurred after the effective date. Papen v. Papen, 216 Va. 879, 224 S.E.2d 153, 155 (1976). The Papen court noted that this application did not present a problem of retroactivity, since wills are ambulatory and thus do not afford a vested right to a party named. Ibid. That same logic applies to this case as well; defendant had no vested right in the life insurance policy since Ryan could have validly changed his beneficiary at any time prior to his death.
The New Hampshire Supreme Court in In re Estate of Sharek, 156 N.H. 28, 930 A.2d 388 (2007), also applied a revocation statute in an analogous situation. In that case, Robert Sharek married Georgette Sharek on July 1, 1963. He executed a *390 will on August 24, 1982, naming her as beneficiary. They divorced on April 20, 1983. He died on August 12, 2005, without having executed a new will. New Hampshire's statute, enacted in 1998, is substantially similar to New Jersey's. Relying in part on Reilly, supra, the New Hampshire Supreme Court ruled that his will had been revoked by operation of law. Sharek, supra, 930 A.2d at 391-92.
We recognize that not all courts have come to a similar conclusion. The Nevada Supreme Court, also dealing with the same issue, held that the statute could not be applied to wills where the divorce occurred before the statute's effective date even though the death occurred after that date. De Mars v. Slama, 91 Nev. 603, 540 P.2d 119, 120 (1975).
We think the better reasoned approach is that utilized in Reilly, supra, Papen, supra, and Sharek, supra. Likewise, we think that same logic also applies to the present case, where the issue concerns a life insurance policy rather than a will. Just as with a will, this life insurance policy allowed Ryan Hadfield to change the beneficiary at any time, and thus defendant, contrary to her argument, did not have a vested right to the policy proceeds. Because she has no vested right, it is not an improper retroactive application of that statute for this court to hold that the amended N.J.S.A. 3B:3-14 applies to this life insurance policy.
The order entered by the trial court merely granted plaintiffs' motion for summary judgment; it did not address to whom the life insurance proceeds should be payable, i.e., to Ryan's estate, or to his sister, whom he had named as the contingent beneficiary. We have noted the language in the statute, to the effect that the matter is treated as if the former spouse had disclaimed all interest. That question has not been raised before us, and we express no opinion on the matter.
The order under review is affirmed.